621 A.2d 108

Clarence BAILEY, a/k/a Clarence W. Bailey
and Charles E. Bailey, Appellants,

v.

Robert E. TUCKER, and Daniel M. Berger, Appellees.

Gregory TRICE, Appellant,

v.

Robert B. MOZENTER, Appellee.

Supreme Court of Pennsylvania.

Argued March 11, 1988.

Reargued Sept. 27, 1990.

Decided Feb. 26, 1993.

238

240

H. David Rothman, for appellants Clarence and Charles Bailey.

Andrew Jackson and Mark Feinman, for appellant George Trice.

Deborah D. Otszewski, David H. Trushel & Associates, for appellees Robert E. Tucker and Daniel M. Berger.

Ernest Tannelli, Jeffrey B. Albert, Fox, Rothschild, O'Brien & Frankel, for appellee Robert B. Mozenter.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

NIX, Chief Justice.[1]

These consolidated appeals present this Court with an opportunity to examine whether counsel in a criminal case may be sued civilly for negligent stewardship. Initially, these cases came before us on the issue of whether the underlying actions were time barred. Although that issue will be addressed, it is overshadowed by a larger concern, to wit: the

1. This opinion was reassigned to this writer on September 1, 1992.

viability of the very cause of action which these plaintiffs are asserting.

34 W.D. Appeal Docket 1987

Appellant, Clarence Bailey, was convicted by a jury on October 14, 1970, for the first degree murder of Marion Carter and was sentenced to life imprisonment. His father, Charles Bailey, now deceased, had retained Daniel M. Berger, Esquire, to defend his son in these criminal proceedings. Robert E. Tucker, Esquire, at that time an associate of Mr. Berger, was trial counsel.

Following the verdict, a direct appeal was filed with this Court in accordance with the procedure at that time for all convictions for felonious homicide.[2] Appellant, then represented by the Allegheny County Public Defender, argued that the prosecution used racially discriminatory practices in the jury selection. By a *per curiam* order dated February 11, 1971, this Court remanded the case for an evidentiary hearing on this allegation. Prior to the hearing, appellant, then represented by privately-retained counsel, filed a petition under the then extant Post Conviction Hearing Act (PCHA).[3] In this petition, Mr. Bailey alleged, *inter alia,* that trial counsel had been ineffective. On November 2, 1973, an evidentiary hearing was conducted on both our remand order and the PCHA petition.

The lower court found the jury selection argument meritless; however, the court granted post-conviction relief by finding that appellant's trial counsel had been ineffective for failing to file a brief in support of post-verdict motions. The court set aside its order dismissing appellant's post-verdict motions and directed that these motions be briefed and argued before the court *en banc.* That court ultimately denied the motions on the merits on August 6, 1976.

2. Act of February 15, 1870, P.L. 15 § 1–2, 19 P.S. § 1886–87.

3. Act of January 15, 1966, P.L. (1965) 1580, N. 554, § 1, 19 P.S. § 1180–1 *et seq.* The present statute can be found at 42 Pa.C.S. § 9541 *et seq.*

The case came before this Court a second time on direct appeal of the judgment of sentence. 480 Pa. 329, 390 A.2d 166 (1978). This Court reversed the judgment of sentence and remanded the case for a new trial, issuing a plurality opinion in support of its action.[4] The basis for this decision was the determination that counsel was ineffective for failing to investigate and to pursue adequately an intoxication defense.

A second trial was held, and on November 10, 1978, appellant was found guilty of voluntary manslaughter. At that point, appellant had served nine years of his life imprisonment sentence. The maximum sentence for voluntary manslaughter was ten years. Under the circumstances the Court of Common Pleas imposed a sentence of time served and released appellant.

On October 22, 1980, appellant commenced an action by writ of summons against Tucker and Berger in the Court of Common Pleas of Allegheny County, alleging both negligence and breach of contract for failing to pursue the intoxication defense. Appellees filed an answer and new matter raising the statute of limitations as a defense. Thereafter, appellees filed a motion for summary judgment pursuant to Rule 1035 of the Pennsylvania Rules of Civil Procedure. The trial court, applying a two year personal injury statute of limitation, held that the action was time barred and granted the motion for summary judgment. This order was affirmed by the Superior Court, 360 Pa.Super. 617, 517 A.2d 198 (1986) (memorandum opinion), and appellant thereafter sought allowance of appeal, which was granted by this Court. 514 Pa. 645, 524 A.2d 492 (1987).

### 42 E.D. Appeal Docket 1987

In the second appeal, Gregory Trice, along with seven co-defendants, was charged with various drug-related federal offenses and prosecuted in the United States District Court

---

4. The Opinion Announcing the Judgment of the Court was authored by Justice O'Brien. It was not joined by any other member of the Court. Justices Roberts, Nix and Manderino concurred in the result; then-Chief Justice Eagen and Justice Pomeroy dissented. Justice Packel did not participate in the Court's decision.

for the Eastern District of Pennsylvania. Appellant retained the services of Robert B. Mozenter, Esquire, to represent him in these proceedings. This agreement was apparently oral as no written attorney-client agreement has been advanced. On March 25, 1975, appellant was convicted by a jury[5] and sentenced to serve fifteen years in a federal penitentiary. The judgment of sentence was affirmed by the United States Court of Appeals for the Third Circuit on December 23, 1976.

On November 3, 1978, appellant acting *pro se,* filed with the United States District Court a petition to vacate his sentence pursuant to 28 U.S.C. § 2255 because of ineffective assistance of counsel. Appellant alleged, *inter alia,* that counsel rendered ineffective assistance in failing to adequately investigate potentially exculpatory physical evidence (specifically a voice exemplar). The District Court denied this petition. On June 10, 1980, the United States Court of Appeals for the Third Circuit reversed the District Court and ordered it to hold an evidentiary hearing with respect to the ineffectiveness claim. Following the hearing, the District Court determined that counsel was ineffective but nonetheless denied relief by reasoning that appellant had not suffered prejudice as a result of the ineffectiveness.

Appellant appealed this decision to the Court of Appeals and, again, that court reversed the District Court and ordered that appellant be given a new trial.[6] The following month appellant was released from prison. On September 23, 1983, the United States Attorney's Office elected to dismiss the indictments against him.

On August 9, 1984, a complaint was filed against appellant's trial counsel (appellee Mozenter) in the Court of Common Pleas of Philadelphia County. This complaint alleged both

---

**5.** Appellant was convicted of conspiracy to unlawfully distribute heroin, 21 U.S.C. § 846, and use of a communications facility (telephone) to facilitate the unlawful distribution of heroin, 21 U.S.C. § 843(b).

**6.** In ordering the new trial, the court found that "the exemplar evidence, if investigated *'might* have led to a viable defense and a [favorable] verdict' ... and that the failure of Trice's trial attorney so to proceed is not harmless 'beyond a reasonable doubt' ". *United States v. Baynes,* 687 F.2d 659, 673 (3rd Cir.1982) (citations omitted).

negligence and breach of contract. In the new matter, appellee raised the statute of limitations as an affirmative defense. Subsequently, appellee filed a motion for judgment on the pleadings pursuant to Rule 1034 of the Pennsylvania Rules of Civil Procedure. The court granted the motion based on its determination that the statutory period had run. On appeal the Superior Court affirmed, holding that the cause of action accrued in 1978 at the time appellant filed his first appeal in federal court alleging ineffectiveness. 356 Pa.Super. 510, 515 A.2d 10 (1986). Appellant sought review from this Court. We granted allocatur, 514 Pa. 643, 523 A.2d 1132 (1987), and consolidated this case with the *Bailey* case.

Counsel for both appellants and both appellees submitted briefs, and oral argument was heard on March 11, 1988. After much consideration this Court requested supplemental briefs and reargument on the limited question of whether there should be immunity for attorney malpractice in the criminal setting. Supplementary briefs were submitted by all parties, and reargument was heard on September 27, 1990. After additional consideration, we have now reached a decision.

I

Although actions in criminal malpractice were once uncommon,[7] they have been occurring with increasing frequency.[8] Such actions can sound in trespass and/or assumpsit and the form of action chosen can be significant both in terms of the elements of the cause of action and in the applicable period of limitation. Since the appellants in these consolidated cases assert causes under both guises we will address both types of cases.

7. *See* Kaus & Mallen, *The Misguiding Hand of Counsel—Reflections on "Criminal Malpractice."* 21 U.C.L.A.L.Rev. 1191, 1192 (1974) (noting that the authors found only eight reported opinions on the subject).

8. *See* Jerome E. Boqutz & Jeffrey B. Albert, *A Survey of the Developing Pennsylvania Law of Attorney Malpractice,* 61 Temple L.Rev. 1237, 1273 (1988).

## A.

## ACTIONS IN TRESPASS

■ Our courts have traditionally viewed trespass actions alleging criminal defense malpractice in the same manner as other claims of professional negligence. *See Alberici v. Tinari,* 374 Pa.Super. 20, 542 A.2d 127 (1988); *Ei Bon Ee Baya Ghananee v. Black,* 350 Pa.Super. 134, 504 A.2d 281 (1986). In a malpractice action based on an attorney's representation in a civil matter, a plaintiff must establish three elements in order to recover:

1. The employment of the attorney or other basis for duty;

2. The failure of the attorney to exercise ordinary skill and knowledge; and

3. That such failure was the proximate cause of damage to the plaintiff.

*Rizzo v. Haines,* 520 Pa. 484, 499, 555 A.2d 58, 65 (1989). *See also Schenkel v. Monheit,* 266 Pa.Super. 396, 405 A.2d 493 (1979) (quoting R. Mallen & Levit, *Legal Malpractice,* 123 (1977)).

In cases involving attorney malpractice arising from representation in the civil arena, the above analysis is appropriate. However, in situations where a criminal defendant attempts to state a cause of action with respect to alleged negligent representation in a criminal proceeding, there are substantial differences which warrant distinct treatment of this cause of action.

Our analysis begins with a review of the factors and considerations advanced by appellees as reasons for adopting absolute immunity for criminal defense lawyers. The reasons include: 1) the threat of a malpractice action for representation of a criminal defendant will have a "chilling effect" on counsel's ability to defend his client fearlessly and independently; 2) as a consequence the system will have difficulty attracting and maintaining attorneys to represent persons charged with crime, and the retention of an attorney will become prohibitively expensive; 3) aggrieved defendants al-

ready have sufficient systemic remedies for attorney ineffectiveness such as appeals and post-conviction proceedings; 4) to permit such a cause of action will result in a flood of litigation; and 5) the existence of such a cause of action leads to the possibility of a guilty "in fact" party actually profiting from his crime where the attorney's negligence was directed to a non-factual aspect of the criminal defense.

Although appellees have advanced these policy arguments it should be noted that they have not offered any persuasive legal authority to support their request for the creation of an immunity, and our independent research has uncovered no jurisdiction in this country which has offered criminal law practitioners such judicially created protection.[9] That is not to say, however, that some of the policy considerations advanced by appellees are not substantial, or do not cause us great concern.

 We will address these concerns in the inverse order of their presentation. First, as for the possibility of a defendant actually profiting from his crime, we require that as an element to a cause of action in trespass against a defense attorney whose dereliction was the sole proximate cause of the defendant's unlawful conviction, the defendant must prove that he is innocent of the crime or any lesser included offense. If a person is found guilty of a crime, and that person is indeed innocent of any degree of that crime, and it is established that the wrongful conviction was proximately caused by counsel's gross dereliction in his duty to represent the defendant, only then will the defendant be able to collect monetary damages. If a person is convicted of a crime because of the inadequacy of counsel's representation, justice is satisfied by the grant of a new trial. However, if an *innocent person* is wrongfully convicted due to the attorney's dereliction, justice requires that he be compensated for the wrong which has occurred.

9. We note that there are English common law precedents for criminal attorney immunity. *See Tower v. Glover*, 467 U.S. 914, 921, 104 S.Ct. 2820, 2825, 81 L.Ed.2d 758 (1984) (citing *Rondel v. Worsley*, 1 App.Cas. 191 (1969) (Eng.)).

 The underlying act for first degree murder and for voluntary manslaughter is the unlawful taking of human life. A person convicted of unlawfully taking a human life may not collect monetary damages for being wrongfully convicted of first degree murder when in fact that person is guilty of a lesser degree of homicide. He will be entitled to a new trial if he proves that the lawyer's ineffective assistance was the cause of his conviction of first degree murder. That is the appropriate relief. However, the purpose of criminal and civil trials is to discover *the truth*, and if the truth is that the defendant committed unlawful acts which constitute the crime or crimes charged, he will not be able to collect damages for the discovery of the truth. Allowing this possibility of a guilty plaintiff collecting damages would violate the public policy of this state. Therefore, defendant must prove, by a preponderance of the evidence, that he did not commit any unlawful acts with which he was charged as well as any lesser offenses included therein.

Appellees also argue that aggrieved convicted defendants already have sufficient recourse through the appellate process and post-conviction filings, and that, unlike their civil counterparts, they can raise the ineffectiveness of their trial or appellate counsel as substantive grounds for reversal. These additional opportunities for relief are designed to insure that a defendant in a criminal matter is accorded his constitutional right to effective counsel.[10] As such, they speak to the relationship between the defendant and the Commonwealth rather than between the defendant and his counsel. We perceive no reason to countenance the use of these constitutional safeguards as a liability shield by defense counsel. Moreover, even if these safeguards are viewed as a form of *deus ex machina* to rectify the ramifications of ineffectiveness, they do not address the time and suffering spent under the burden of an unwarranted conviction. Thus, although these safeguards may be related to the viability of a criminal

10. *See Strickland v. Worthington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (Sixth Amendment right to counsel includes the right to effective counsel).

malpractice action,[11] they do not provide reasons to eliminate such an action.

Appellees' other arguments are not so easily resolved. They contend that if the threat of malpractice looms over the representation of a criminal defendant the result will be a diminution of defense counsels' willingness to exercise independent legal judgment, to be replaced by a defensive mindset geared more toward avoiding malpractice, and less toward obtaining acquittals. For example, an attorney who believes, based on his professional experience, that a witness suggested by the defendant will do more harm than good might nonetheless accede to the defendant's desire to have that witness testify rather than exercise his legal judgment to exclude him; or defense counsel may believe that it would be unwise to cross-examine a certain witness but because of the possibility that someone may later claim that this decision was erroneous, or indicative of a lack of preparedness, the attorney may elect to cross-examine rather than rest on his judgment.

It is contended, and we agree, that in such instances the interests of the respective defendant, and the system as a whole, would be ill-served. Additionally, the willingness of defense attorneys to utilize plea bargains will almost certainly diminish where there exists any possibility however small, that the Commonwealth could not have made its case; this may occur, despite the fact that in most cases plea bargains represent a benefit for both the defendant and the system at large. Additionally, in our already overburdened system it behooves no one to encourage the additional expenditure or resources merely to build a record against a potential malpractice claim.

In addition to the above concerns, appellees raise the following arguments: availability of actions by defendants against their former attorneys will provide a powerful disincentive to practitioners in the field to continue in that field; the proliferation of such suits will certainly increase insurance premiums for such practitioners; and such costs will ultimately be

11. See our discussion *infra* regarding the exhaustion of ineffectiveness remedies prior to proceeding with a criminal malpractice action.

passed on to the system at large, because there will be fewer attorneys to represent a greater number of clients, and the cost of retaining such attorneys will inevitably rise.

The above concerns are significant and, although we do not agree that they are of such magnitude that all causes of action for criminal malpractice should be barred, we agree with appellees that the reasons advanced in support of an immunity are substantial and important to the entire system charged with the administration of criminal law.

■ Furthermore, we must emphasize the unique position which a client accused of a crime occupies *vis a vis* a civil client. Unlike in the civil litigation area, a client does not come before the criminal justice system under the care of his counsel alone; he comes with a full panoply of rights, powers, and privileges. These rights and privileges not only protect the client from abuses of the system but are designed to protect the client from a deficient representative. Thus, whereas in a civil matter a case once lost is lost forever, in a criminal matter a defendant is entitled to a second chance (perhaps even a third or fourth chance) to insure that an injustice has not been committed. For these reasons we are constrained to recognize that criminal malpractice trespass actions are distinct from civil legal malpractice trespass actions, and as a result the elements to sustain such a cause of action must likewise differ.

■ Consequently, today we hold that a plaintiff seeking to bring a trespass action against a criminal defense attorney, resulting from his or her representation of the plaintiff in criminal proceedings, must establish the following elements:

(1) The employment of the attorney;

(2) Reckless or wanton disregard of the defendant's interest on the part of the attorney;

(3) the attorney's culpable conduct was the proximate cause of an injury suffered by the defendant/plaintiff, i.e., "but for" the attorney's conduct, the defendant/plaintiff would

have obtained an aquittal or a complete dismissal of the charges.[12]

(4) As a result of the injury, the criminal defendant/plaintiff suffered damages.

(5) Moreover, a plaintiff will not prevail in an action in criminal malpractice unless and until he has pursued post-trial remedies and obtained relief which was dependent upon attorney error;[13] additionally, although such finding may be introduced into evidence in the subsequent action it shall not be dispositive of the establishment of culpable conduct in the malpractice action.[14]

## B.

## ACTIONS IN ASSUMPSIT

We now turn our attention to the second type of malpractice issue: an assumpsit claim based on breach of the attorney-client agreement. This claim is a contract claim and the attorney's liability in this regard will be based on terms of that contract. Thus, if an attorney agrees to provide his or her best efforts and fails to do so an action will accrue. Of course an attorney who agrees for a fee to represent a client is

12. The defendant/plaintiff must prove by a preponderance of the evidence that he did not commit any unlawful acts with which he was charged as well as any lesser offenses included therein. Resolving this question will perhaps cause the greatest consternation. However, the only one way to protect the integrity of the system is to permit the attorney to introduce whatever evidence that impacts on the defendant/plaintiff's entitlement to compensation. Such evidence can include any and all confidential communications, as well as otherwise suppressible evidence of factual guilt.

13. This requirement does not, however, relieve the plaintiff of his duty to initiate this cause of action within the statute of limitations period as hereinafter discussed, but it does raise a procedural question, to wit: what is to be done with a civil action filed prior to the completion of the post-conviction process? The answer is that an attorney defendant who is served with a complaint alleging professional malpractice for the handling of a criminal matter may interpose a preliminary objection on the grounds of demurrer. *See* Pa.R.C.P. No. 1017(b)(4). The trial court shall then reserve its ruling on said objection until the resolution of the post-conviction criminal proceedings.

14. In this regard we wish to emphasize that a finding of ineffectiveness is not tantamount to a finding of culpable conduct.

by implication agreeing to provide that client with professional services consistent with those expected of the profession at large.

Thus, this cause of action proceeds along the lines of all established contract claims. It does not require a determination by an appellate court of ineffective assistance of counsel, nor does the client need to prove innocence. However, in anticipation of potential problems it is necessary to comment on the aspect of recoverable damages in such an action; quite simply, such damages will be limited to the amount actually paid for the services plus statutory interest. Our reasons for imposing this limitation are the same as those discussed above; to allow consequential damages in such a situation will engender the same problems as those we sought to limit above.

## II

## STATUTE OF LIMITATIONS

With regard to the respective statutes of limitations, the rule in this Commonwealth is that the statutory period commences at the time the harm is suffered or, if appropriate, at the time the alleged malpractice is discovered.[15] In the

15. *Pocono Int'l Raceway v. Pocono Produce, Inc.*, 503 Pa. 80, 84, 468 A.2d 468, 471 (1983) ("As a matter of general rule, a party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based, and to institute suit within the proscribed statutory period."). We recognize the concern about the amount of claims that might result and that might clog the civil dockets. However, we feel that it is more important that we require these criminal defendants to file their claims within the statutory period to prevent any injustice to an attorney who has to defend a claim of malpractice many years after his relationship with the client ends. *Insurance Co. of N. Am. v. Carnahan*, 446 Pa. 48, 51, 284 A.2d 728, 729 (1971) ("The purpose of any statute of limitations is to expedite litigation and thus discourage delay and the presentation of stale claims which may greatly prejudice the defense of such claims."); *Schmucker v. Naugle*, 426 Pa. 203, 205, 231 A.2d 121, 123 (1967) ("Statutes of limitation are vital to the welfare of society and are favored in the law."); *Ulakovic v. Metropolitan Life Ins. Co.*, 339 Pa. 571, 575, 16 A.2d 41, 42 (1940) ("If any person has a right which he wishes enforced, he should enforce it

context of a criminal malpractice action, the time when the harm is suffered will, in the typical case, be easily identifiable, i.e., the date of sentencing. However, since criminal sanctions are by their nature directed to the criminal defendant's actions, and thus those actions are presumed to be the legal cause of the harm suffered, the date a defendant becomes aware that his counsel may have been responsible for the harm will likely be harder to pinpoint. Nonetheless, it is necessary to establish a point from which the statute of limitations period will commence. The appropriate starting point is the termination of the attorney-client relationship, since at that point the aggrieved defendant is aware of the injury (i.e., the conviction), and is on clear notice to investigate any alternate cause of that harm which he believes to exist.[16] In this regard the defendant is not unlike the medical patient who becomes aware of an injury and is then placed on notice to discover its cause. We now resolve the instant cases.

## A.

## 34 W.D. APPEAL DOCKET 1987

With respect to appellant Clarence Bailey, on April 13, 1970, he was convicted of first degree murder, allegedly as a result of the malpractice of his trial counsel, Robert E. Tucker, Esquire. Appellant was sentenced to life in prison on October 14, 1970. On July 19, 1973, represented by new counsel, appellant filed a petition under the Post–Conviction Hearing Act alleging, *inter alia*, that he had been denied effective assistance of counsel. Therefore, the statute of limitations began to run no later than July 19, 1973, since on that date appellant was clearly on notice of appellee's alleged dereliction. The instant malpractice action was commenced

promptly. The person against whom the right is to be enforced might be greatly prejudiced by plaintiff's delay.").

16. This will encompass situations where the same attorney represents the defendant at trial and throughout the appellate process. *See Hughes v. Mahaney and Higgins,* 821 S.W.2d 154 (Tex.1991).

254

on October 22, 1980, well beyond any applicable period of limitation.[17]

Accordingly, the order of the Superior Court affirming the grant of summary judgment by the trial court is hereby affirmed.

### B.

### 42 E.D. APPEAL DOCKET 1987

With respect to appellant Trice, on March 25, 1975, he was convicted of the above-described offenses, allegedly as a result of the malpractice of his trial counsel, Robert B. Mozenter, Esquire. On November 3, 1978, appellant filed a *pro se* petition to vacate his sentence. Accordingly, at least as of that date, appellee Mozenter's services had been terminated, and the statute of limitations relating to any trespass action had begun to run. Appellant filed the instant criminal malpractice action on August 9, 1984, well beyond the two year limitations period applicable to the trespass actions. The only period of limitations under which appellant could sustain his assumpsit cause of action would be the six year statute with respect to written contracts. *See* 42 Pa.C.S. § 5504. However, appellant has not alleged that a written contract existed between himself and appellee. Therefore, the longest possible period of limitations would be the four year period for an oral contract. *See* 42 Pa.C.S. § 5525. The instant action was filed beyond such four year period.

Accordingly, the order of the Superior Court affirming the trial court's granting of appellee's motion for judgment on the pleadings is hereby affirmed.

McDERMOTT, J., did not participate in the decision of this case.

17. The appropriate statutes of limitations are as follows: In an action in trespass the plaintiff has two years in which to file his complaint. 42 Pa.C.S. § 5524. In an action in assumpsit for an oral contract the applicable limitation period is four years. 42 Pa.C.S. § 5525. For a written contract, the limitation period is six years. 42 Pa.C.S. § 5527.

ZAPPALA and PAPADAKOS, JJ., file concurring opinions.

LARSEN, J., files a concurring and dissenting opinion.

ZAPPALA, Justice, concurring.

I concur in the Court's judgment affirming the orders of the courts below, which held these actions time barred. I also agree that the limitations period for actions such as these begins to run when the attorney ceases to represent the client in the matter in which the malpractice is alleged to have occurred. However, I do not believe the majority has offered sound reasons for adopting different elements for these actions than are applicable in other negligence/malpractice cases. Especially troubling is the decision to fashion a higher degree of culpability.

When the Court first granted review of these cases, the sole question presented and disputed by the parties here and in the courts below was when the limitations periods began to run and, accordingly, whether the actions had been timely filed. No one advanced the proposition that the complaints failed to state causes of action upon which relief could be granted, nor did anyone argue that the elements of the actions were anything other than the standard elements of any complaint in trespass asserting negligence. Furthermore, when this Court ordered reargument sua sponte, we asked the parties to address a single question, whether immunity for attorney malpractice in a criminal setting should be adopted as the law of this Commonwealth. Nothing in this question hints of the possibility that the malpractice action against a criminal defense attorney might be refashioned with different elements. To the extent that the Majority Opinion goes beyond the questions presented, it suffers from the usual failings of an advisory opinion and from the additional defect of not being informed by the presentations of counsel. To the extent that the question posed by the Court created a context in which it became possible to advance this approach as a "middle ground," I regret having acceded to the order for reargument.

As stated by the majority, on the issue of creating an immunity for criminal defense attorneys, the Appellees make a number of public policy arguments in favor of recognizing immunity. Malpractice actions, it is said, encourage an undesirable duplicity of legal proceedings. Civil juries should not be permitted to speculate as to how the outcome of a criminal trial might have been different but for the defense attorney's negligent representation. Moreover the potential for civil liability may have a chilling effect on attorneys, perhaps to the extent of impinging on the constitutional right to counsel. Some, it is argued, will be discouraged from engaging in representation of criminal defendants, either from fear of liability or from inability to obtain malpractice insurance at affordable rates. Others might be affected in the exercise of their professional discretion, choosing strategy by weighing not only the client's best interests but also the possible impact on the attorney's own potential liability. The availability of post-conviction review of criminal proceedings and disciplinary actions against errant attorneys are also argued to be sufficient correctives.

The Appellants respond that it would be inappropriate to adopt a new type of immunity not recognized at common law. The trend, it is noted, has been to restrict common law immunities, not expand them. *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973). It is also suggested that the creation of a new type of immunity may be beyond this Court's authority, it being for the legislature to determine the need for such changes based on legislative findings and determinations of public policy.[1] *Cf., Com-*

1. Whether or not the Court has the authority to establish immunity, alter the elements of the cause of action, or alter the standard of culpability, the fact that this Court has deliberated nearly five years before reaching this decision would seem to indicate that the legislature is the better forum to weigh the many policy considerations and establish the law in this area.

Conversely, to the extent that the majority has here indulged in the weighing of policy considerations to re-formulate a cause of action according to the perceived needs of a particular class of defendants (i.e., lawyers), one would expect them to be equally receptive to far-ranging policy arguments on the "need to protect" other classes of

*monwealth v. Johnson*, 507 Pa. 27, 487 A.2d 1320 (1985) (court has no inherent power to grant immunity from prosecution, which is controlled by statute). The Appellants also note that there has been no dearth of criminal defense attorneys or public defenders because of fear of civil liability, nor is there a problem with litigation such as would justify changing the status of the law. Further, it is argued that any difficulties posed by the overlap of post-conviction remedies and malpractice actions can be resolved through evidentiary and procedural rulings, instead of the drastic preclusion of suit altogether.

The majority concludes that none of the arguments put forward by the appellees supports the creation of an immunity, but determines that some of these policy considerations weigh in favor of recognizing different standards. Specific citation is made to the argument that "if the threat of malpractice looms over the representation of a criminal defendant the result will be a diminution of counsels' willingness to exercise independent legal judgment, to be replaced by a defensive mindset geared more toward avoiding malpractice, and less toward obtaining acquittals." Opinion at 249, 621 A.2d at 114. The majority also points to the claim that "the availability of actions by defendants against their former attorneys will provide a powerful disincentive to practitioners in the field to continue in that field; the proliferation of such suits will certainly increase insurance premiums for such practitioners; and such costs will ultimately be passed on to the system at large because there will be fewer attorneys to represent a greater number of clients, and the cost of retaining such attorneys will inevitably rise." Opinion at 249–50, 621 A.2d at 114. After setting out these policy arguments, which are identified as "substantial and important to the entire system charged with the administration of criminal law," the majority makes the quantum leap to the conclusion that a different standard of culpability, "reckless or wanton disregard of the defendant's interests on the part of the attorney," should be applicable.

defendants (e.g. doctors, accountants, etc.) as well. See infra at 266–68, 621 A.2d at 123.

The same arguments about increased litigation, nuisance suits, malpractice insurance rates, etc., can be, indeed have been made about any and every other profession. Likewise with the arguments that such actions have a chilling effect on practitioners. It has been reported, for example, that the potential for malpractice litigation, and accompanying increases in insurance costs, in some of the medical specialties has led some doctors to give up or severely limit their practice, leading to shortages of specialists, and that many doctors practice "defensive medicine," ordering tests and procedures not because they believe them necessary but to avoid later charges of malpractice, thereby greatly increasing medical costs.

To declare for reasons such as these that a lawyer's conduct should be examined against a degree of culpability greater than that applied in any other negligence case, the Court must implicitly make the unseemly and unsubstantiated finding that an attorney's function in a criminal trial is somehow more important, more in need of protection, than the work of other professionals. This decision will be roundly and justly condemned as an example of the legal system "protecting its own," and with impunity because, after all, it is the lawyers who make and enforce the rules of the game.

The majority makes the additional observation that a criminal defendant and a civil client occupy different positions vis-à-vis their attorneys, the former being protected by "systemic rights and privileges" from abuses of the system and deficient representation. Presumably, the point is that since the criminal defendant has means available to redress the harm other than resorting to an action against his attorney, there is less need for such actions. Again, whatever the validity of this point, it does not support the conclusion that a different standard of culpability is appropriate. It does no more than point up the fact that unlike other injuries, the separate remedies for the harms involved with legal malpractice are all within the realm of the justice system. One claiming physical harm as a result of medical malpractice must seek further medical help to correct the physical harm; to vindicate his

right not to have been inflicted with the harm in the first place, he must seek redress in the legal forum. A person claiming that attorney misfeasance caused his incarceration will attempt to correct the harm itself by pursuing legal challenges to the judgment of sentence; he may separately attempt to vindicate his right never to have been subject to imprisonment at all by proceeding against the attorney who caused the harm. That the correctives for the harms are both within the judicial arena, however, does not alter the nature of the claims. Nor should it alter the standards by which the claims are judged.

As to the elements necessary to prove a cause of action against an attorney for malpractice in conducting a criminal defense, I would approve the analysis developed by the Superior Court, under which attorney malpractice claims are treated in the same manner as other claims of professional negligence, and bear the traditional elements of a general claim of negligence—duty, breach, causation, and damages. I would hold that a plaintiff must show

1) The employment of the attorney or other basis for duty;

2) The failure of the attorney to exercise ordinary skill and knowledge; and

3) That such negligence was the proximate cause of damage to the plaintiff.

*Schenkel v. Monheit,* 266 Pa.Super. 396, 405 A.2d 493 (1979).

The proof of actual damages in most cases will require the plaintiff to establish that he or she would have been successful in the underlying action had the attorney not been negligent. This is a far cry, however, from the majority's argument that the plaintiff "must prove that he is innocent of the crime or any lesser included offense." Opinion at 247, 621 A.2d at 113.[2]

---

**2.** Such an argument not only misperceives the nature of the claim of legal malpractice against a criminal defense attorney, it also betrays a serious misapprehension of the nature of the criminal justice system that I cannot believe my colleagues in fact hold.

In broad scope, one cannot dispute the assertion that "the purpose of ... trials is to discover *the truth,*" Opinion at 248, 621 A.2d at 113

On the question of commencement of the limitation period, Bailey would have us hold that the limitation period began to run no earlier than November 10, 1978, the date he was found guilty of the lesser crime of voluntary manslaughter following retrial, and perhaps as late as December 20, 1978, when he was released from prison. According to Bailey, no cause of action could accrue until his damages were ascertained or reasonably ascertainable in fact. Defining the harm to him as being his wrongful, excessive incarceration, Bailey contends that not until the second jury had rendered a verdict was it certain that the first jury's verdict and the sentence imposed on it were wrongful or excessive.

In a similar vein, Bailey argues that any action brought prior to the second trial's conclusion would have been barred by collateral estoppel of record. According to this argument, so long as a judgment of sentence remained on the record, entitled to a presumption of validity and regularity, it could not be questioned in a civil action; otherwise the civil jury would be called on to second guess the criminal jury, and the criminal judgment would be deprived of its finality and integrity.

Trice's primary argument is similar to this latter argument, although not phrased in terms of collateral estoppel. Trice submits that as a matter of policy we should hold that the

(emphasis in original). However, it is axiomatic that in a criminal case, the Commonwealth is put to the burden of establishing every element of the crime beyond a reasonable doubt according to procedural and evidentiary rules. The role of the defense attorney is to assure that the rules are followed and the Commonwealth is put to its proof. If a person has in fact committed an illegal act, but the Commonwealth for one or more reasons is unable to meet its burden, that person is entitled to an acquittal, which is not a judgment that he or she is innocent. In such a case, if the attorney's representation fails to meet the appropriate standard and the Commonwealth, as a result, obtains a conviction it otherwise could not have obtained, it may truly be said that the proximate cause of the conviction is the attorney's negligence. To hold otherwise is to hold that a criminal defendant is entitled to judgment of acquittal only if he or she is factually innocent. I utterly reject the manipulations engaged in by the majority under the pretense of protecting public policy. I have the utmost faith in the ability of juries and trial judges to render decisions in these cases as they are called on to do in every other case alleging professional negligence.

statute of limitation is tolled, or the action does not accrue, until the final resolution of the matters pertaining to the underlying case. This would eliminate the incongruity of having a person against whom a valid judgment of sentence exists trying to persuade a civil jury that the conviction is invalid.

Trice also suggests that the discovery rule should be applicable to actions like these, and that insofar as the discovery rule raises an issue of fact, judgment on the pleadings in his case was inappropriate. The common formulation of the discovery rule is that the limitation period for commencing an action will be tolled where a reasonable person, despite the exercise of due diligence, would be unable to know of his injury or its cause. Trice contends that the question of whether a person has exercised due diligence is for the jury, and that "a jury could well decide that [he] was not unreasonable in discovering the fact that counsel's negligence and breach had 'harmed' him only when an appellate court informed him of same." Brief at 17.

I must reject the conception of harm on which these arguments are implicitly premised. In the ordinary course of affairs, it would seem that being subjected to a term of imprisonment is a harm or an injury to the person. Nor can there be any doubt that the fact of this harm is readily ascertainable upon its occurrence. The appellants' position is that this injury should not be recognized as a "legal" injury until it has been declared wrongful in a judicial proceeding, either on direct appeal or collateral review of the conviction itself. This approach would make such claims unique among the varieties of negligence; in no other setting does the law depend on a separate determination of wrongfulness to qualify a harm as actionable. On the contrary, it is the very function of the lawsuit to determine whether the injury was wrongfully caused. I perceive no justification for such a distinction.

As discussed infra at page 266–68, 621 A.2d at 123, I believe the confusion arises out of the fact that unlike other injuries, the remedies for legal malpractice, though separate and distinct, are all within the realm of the legal system. A claim,

whether on direct appeal or in collateral proceedings, that a conviction should be set aside because the process by which it was obtained was flawed by counsel's deficient performance asserts fundamentally the same grounds for relief as a complaint seeking money damages for harm caused by an attorney's negligence. To be sure, the form of relief differs according to the different capacities of the legal proceedings. In each case, however, the basic claim is the same. Acknowledging *arguendo* that the verdict is proper in the context of the proceedings as they were conducted, each argues that the proceedings and the result would have been different had the attorney rendered appropriate representation. The harm in each case is the same—the defendant's judgment of sentence. The cause in each case is the same—the attorney's misfeasance. The *fact* of the harm does not become more certain with a judicial determination of ineffective assistance. Rather, the cause is established, at least for purposes of that proceeding. Likewise, the *fact* of the harm is no more certain upon the favorable outcome of a later trial, only the amount or degree of the harm is.

In the present context, we may say that a valid judgment of sentence is strong evidence that the "cause" of a person's incarceration is his criminal conduct. That judgment, however, is not insulated from all challenge. Even after the judgment has been affirmed on direct appeal, it remains open for the person to claim that the "cause" of his incarceration is a fault in the process through which the judgment was reached. Compare, *Grohmann v. Kirschmann,* 168 Pa. 189, 203, 32 A. 32 (1895) (in action for false arrest, guilty verdict is strong prima facie evidence of probable cause, but may be rebutted by proof that it was obtained by corrupt or undue means.) With respect to when such actions may be brought, I find no meaningful difference in the effect on the integrity of the judgment between habeas corpus or other post-conviction challenges and a civil action for money damages.

It is perhaps troubling to envision the possibility of conflicting assessments of the evidence if such similar issues are put to different factfinders for resolution. It would indeed not be

readily understandable were a court to find ineffective assistance and a civil jury find no negligence. *See Reese v. Danforth,* 486 Pa. 479 at 497, n. 10, 406 A.2d 735 at 745, n. 10 (1979) (O'Brien, J., dissenting). Even more perplexing would be the possibility of a civil jury awarding damages on a finding of negligence while a court was finding no ineffective assistance and affirming the judgment of sentence. It is a mistake, however, to construct special categories to avoid these spectres, which the system is already equipped to minimize and which might never materialize.[3]

Accordingly, I would hold that the limitation period on a legal malpractice action against a criminal defense attorney begins to run on the date of the entry of the order terminating the proceedings in which the attorney has rendered his services. I would also hold, however, that the running of the limitation period will be tolled where the attorney has continued to represent the defendant in proceedings on direct appeal, inasmuch as by its very nature such representation asserts, both on behalf of and to the client, that the cause of the unfortunate result was a legal error, not the attorney's ineffective (or negligent) assistance. Based on this rationale, I agree with the majority's review of the record and determination that the actions were time barred.[4]

3. It would seem that traditional principles of collateral estoppel, for instance, would bar an assertion of negligence where a court had ruled on appeal or in a collateral proceeding that the attorney's conduct was not unreasonable or not prejudicial. A determination of ineffective assistance, however, would not be binding in a civil action against the attorney, since the attorney was not a party to the proceeding where that ruling was made. Indeed, it might well be found that evidence of a finding of ineffectiveness would be inadmissible in a civil action, on the grounds that the probative value of such a determination would be outweighed by the likelihood of prejudice, in that a jury might readily "defer" or give undue weight to the previous judicial determination even though it had been made in a proceeding where the attorney was not an adversarial party.

4. Because I agree with the majority as to when the limitation period began to run, I disagree with Justice Larsen's assertion that neither contract action was time barred. In this appeal, Trice has not separately argued the tort and contract aspects of his claim. Superior Court applied the four year period of 42 Pa.C.S. § 5525(3), (4) (oral contract or contract implied in law) to the contract claim because there was no

PAPADAKOS, Justice, concurring.

I join in the majority opinion but write separately to express that I would have preferred the commencement of any statute of limitations applicable in these cases to be at the time a defendant's innocence is established in the criminal setting since the defendant has no enforceable cause of action until such time. I believe it will overburden our courts to force malpractice complaints to be filed within two, four or six years after the dissolution of the attorney-client relationship. Such complaints will languish in the court backlog for years until all criminal proceedings have culminated in innocence.

My colleagues have opted for an earlier commencement date and time will tell what mischief, if any, will be visited upon our courts by the premature filing of complaints by every defendant following sentencing and the change of lawyers for the prosecution of post-trial motions and appeals.

LARSEN, Justice, concurring and dissenting.

I concur, in part, in the result reached in the appeal of Clarence Bailey at No. 34 W.D. Appeal Docket 1987. Although I disagree that the cause of action accrued at the time

instrument in writing, although Trice claims and Mozenter conceded that a retainer agreement had been signed, which might implicate the six year period of 42 Pa.C.S. § 5527(2), (6). Because in my view the action was not timely commenced regardless of which period applies, I do not explore the differences in practice and pleading that would attend the different theories of recovery. I would, however, note our prior holdings that the limitation period is imposed on the cause of action, not on the form of action, and that the two year limitation period for personal injuries cannot be avoided by the expedient of pleading in contract. *See, e.g., Jones v. Boggs & Buhl*, 355 Pa. 242, 49 A.2d 379 (1946); *see also, Murray v. University of Pennsylvania Hospital*, 340 Pa.Super. 401, 490 A.2d 839 (1985) (nature of damages sought controls which statute of limitation applies).

I would also note that although Charles Bailey averred the existence of an oral agreement, the argument that the four year period of 42 Pa.C.S. § 5525(3) might apply to Charles Bailey's action was not raised in Superior Court and was not specifically raised in this appeal. Moreover, although the Brief for the Appellants acknowledges that Charles Bailey is now deceased, there appears to have been no substitution of parties pursuant to Pa.R.A.P. 502, and thus we do not have before us any party who could advance the contract claim, even if it had not been waived.

of the termination of the attorney-client relationship, I agree that appellant Bailey's allegations of negligence in his action for legal malpractice against Robert E. Tucker and Daniel M. Berger are time barred by the two-year statute of limitations applicable to negligence actions. I dissent, however, from the finding of the majority that Bailey is precluded from litigating that part of his complaint sounding in contract. I also dissent to the majority's disposition of Gregory Trice's appeal at 42 E.D. Appeal Docket 1987, as I find that his action for legal malpractice against Robert B. Mozenter is not time barred by either applicable statute of limitations.

In addition to my disagreement with the majority's analysis of the statute of limitations issue, I disagree with the majority's use of a "reckless or wanton disregard of the defendant's interest" standard in assessing the negligence of a criminal defense attorney in a malpractice action. Maj. op. at 248–50, 621 A.2d at 114. I will address these issues seriatim.

With regard to the accrual of a cause of action for legal malpractice against a criminal defense attorney, I believe that such a cause of action accrues and the statute of limitations begins to run when a court's order affirming the client's contention of ineffectiveness becomes final.[1] *See Downton v. Vandemark,* 571 F.Supp. 40 (N.D.Ohio 1983); *Triplett v. Azordegan,* 478 F.Supp. 872 (N.D.Iowa 1977); and *Moeller v. State,* 474 N.W.2d 728 (S.D.1991); *see also Johnson v. Schmidt,* 719 S.W.2d 825 (Mo.App.1986) (malpractice action

---

1. The courts in other jurisdictions are not uniform in their treatment of this issue. *See, e.g., Thomas v. Howard,* 455 F.2d 228 (3d Cir.1972) (applying New Jersey law, cause of action accrues and statute of limitations begins to run when attorney-client relationship terminates); *Hunt v. Bittman,* 482 F.Supp. 1017 (D.D.C.1980) (cause of action accrues and statute of limitations begins to run when client suffers actual injury), *aff'd,* 652 F.2d 196 (D.C.Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 315, 70 L.Ed.2d 158 (1981); *Henzel v. Fink,* 340 So.2d 1262 (Fla.Dist.Ct.App.1976) (cause of action accrues and statute of limitations begins to run from time client discovered or through use of reasonable diligence should have discovered alleged negligence), *cert. denied,* 348 So.2d 948 (Fla.1977); and *Mullins v. Belcher,* 159 Ga.App. 520, 284 S.E.2d 35 (1981) (cause of action accrues and statute of limitations begins to run at the time of the occurrence of the negligent act).

premature if brought while post-conviction proceedings are still pending). If the majority herein insists that a finding of ineffectiveness is a necessary element, which a criminal defendant must prove in order to successfully prosecute a legal malpractice claim against his or her attorney, the cause of action cannot be said to accrue until the determination of ineffectiveness has been made.

The majority has created a procedural quagmire by proposing that, where a conclusive determination of ineffectiveness has not yet been made, the defendant-attorney in the malpractice action "may interpose a preliminary objection on the grounds of demurrer," and that the "trial court shall then reserve its ruling on said objection until the resolution of the post-conviction criminal proceedings." Maj. op. at 251 n. 13, 621 A.2d at 115. Instead of facilitating the proper exercise of justice, the majority thwarts that goal and bogs down our already overburdened judicial system by clogging the courts and judge's dockets with legal malpractice claims that lack a key element of the claim, i.e., the finding of ineffectiveness. In all likelihood, that key element will never exist, and such legal malpractice claims will languish in our judicial system for years awaiting resolution. This unnecessary and ridiculous expenditure of court time, space and resources serves only to pad the pockets of attorneys at the expense of our entire judicial system.

This Court's decision in appellant Bailey's underlying criminal case, which decision granted Bailey a new trial on the basis of trial counsel's ineffectiveness, was entered on July 19, 1978. *Commonwealth v. Bailey*, 480 Pa. 329, 390 A.2d 166 (1978). Bailey's legal malpractice action was commenced by writ of summons on October 22, 1980. As the writ of summons was filed more than two years after our decision became final, I agree with the majority that Bailey's negligence claims are time barred. Those claims based upon breach of contract, however, are not barred as the applicable statute of limitations for such claims is six years. 42 Pa.C.S. § 5527. Thus, I would remand Bailey's action in assumpsit to the Court of Common Pleas of Allegheny County for further proceedings.

The Court of Appeals for the Third Circuit entered its decision granting appellant Trice a new trial on the basis of trial counsel's ineffectiveness on August 11, 1982. *United States v. Baynes,* 687 F.2d 659 (3d Cir.1982). Trice filed his complaint for legal malpractice on August 9, 1984. Because Trice filed his civil action within two years of the date of the decision of the Court of Appeals, I would hold that his civil action is timely in its entirety and would remand the case to the Court of Common Pleas of Philadelphia County for further proceedings.

With respect to the standard of care the majority has established as an element of a cause of action for legal malpractice against a criminal defense attorney, i.e., "reckless or wanton disregard of the defendant's interest," maj. op. at 250, 621 A.2d at 115, I dissent. This standard is so high that even gross negligence does not meet the majority's standard of care, and in effect, for all practical purposes, there is no cause of action. I believe that the duty owed by a criminal defense attorney to his or her client is the same duty as that owed by the civil litigation attorney, i.e., reasonable and ordinary care and diligence. Of course, as always, this standard is applied and related to the context of the case involved. The context of a criminal trial is usually very different from that of a civil trial. Criminal trials are usually more emotional and more heavily charged because of the facts of the case, the alleged criminal behavior involved and the possibility of conviction.

In advocating the reasonable and ordinary care and diligence standard, I am in agreement with the majority of other jurisdictions which have considered the issue. *See McCord v. Bailey,* 636 F.2d 606 (D.C.Cir.1980) (ineffectiveness standard of reasonable competence to be used in civil malpractice action against criminal defense attorney), *cert. denied,* 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 839 (1981); *Mylar v. Wilkinson,* 435 So.2d 1237 (Ala.1983) (standard of ordinary and reasonable level of skill, knowledge, care, attention, and prudence common to members of the legal profession in the community); *Bowman v. Doherty,* 235 Kan. 870, 686 P.2d 112 (1984)

(standard of reasonable and ordinary care and diligence, attorney to use best judgment and to exercise reasonable degree of learning, skill and experience ordinarily possessed by other attorneys in the community); *Krahn v. Kinney,* 43 Ohio St.3d 103, 538 N.E.2d 1058 (1989) (same elements of proof for all legal malpractice actions whether arising from criminal or civil representation). *See also Sincox v. Blackwell,* 525 F.Supp. 96 (W.D.La.1981) (degree of care, skill, and diligence exercised by prudent practicing attorneys in the locality); and *Sammons v. Rotroff,* 653 S.W.2d 740 (Tenn.Ct.App.1983) (reasonable duty), *cert. denied,* 464 U.S. 860, 104 S.Ct. 186, 78 L.Ed.2d 165.

Additionally, a client is a client is a client is a client, to paraphrase Gertrude Stein, and the majority is now treading upon rights of constitutional dimension in treating similarly situated litigants differently under the law. Accordingly, I believe that the majority gravely errs in establishing the "reckless or wanton disregard of the defendant's interest" standard which applies *only* to criminal defendants.

As I stated in *Muhammad v. Strassburger, McKenna, Messer, Shilobod, and Gutnick,* 526 Pa. 541, 554, 587 A.2d 1346, 1352 (1991) (Larsen, J., dissenting), the majority is today declaring a "LAWYER'S HOLIDAY." "If a doctor is negligent in saving a human life, the doctor pays. If a priest is negligent in saving the spirit of a human, the priest pays. But if a lawyer is negligent in advising his client ... the client pays." *Id.* at 555, 587 A.2d at 1352–53. Another special preference is being accorded to attorneys herein. While their clients serve time due to negligent representation, criminal defense attorneys will be able to hide behind a standard that is virtually impossible to meet.

I do agree that if the plaintiff-client is guilty of the crime, there would not be a cause of action against the attorney as there would not be any damages.