**HARSCO CORPORATION, Plaintiff,**

v.

**KERKAM, STOWELL, KONDRACKI & CLARKE, P.C.; Edward J. Kondracki; and John C. Kerins; Defendants.**

Civil Action No. 1:CV–96–1786.

United States District Court, M.D. Pennsylvania.

April 25, 1997.

Richard G. Tuttle, Linda J. Karpel, Anderson, Kill & Olick, Philadelphia, PA, for Harsco Corp.

C. Andre Washington, Post & Schell, P.C., Philadelphia, PA, for Kerkam, Stowell, Kondracki & Clarke, P.C.

C. Andre Washington, Carol M. Cowhey, Post & Schell, P.C., Philadelphia, PA, for Edward J. Kondracki, C. Kerins.

*MEMORANDUM*

CALDWELL, District Judge.

## I. *Introduction.*

In this diversity action controlled by Pennsylvania law, the plaintiff, Harsco Corporation, sued the defendants, Kerkam, Stowell, Kondracki & Clarke, P.C., a law firm, and Edward J. Kondracki and John C. Kerins, two lawyers with the firm. Harsco alleges that the individual defendants committed malpractice while representing IKG Industries, a division of Harsco, in patent litigation in the Eastern District of Michigan.

We are considering the motion for summary judgment of the individual defendants. They assert that the action against them is barred by the two-year statute of limitations.[1] The motion requires us to decide when a cause of action for legal malpractice can accrue under Pennsylvania law when the malpractice is alleged to have occurred during representation in civil litigation. We will evaluate the motion under the well established standard, see *Davis v. Portline Transportes Maritime Internacional*, 16 F.3d 532, 536 n. 3 (3d Cir.1994), and we provide the following undisputed background from the summary-judgment record.

## II. *Background.*

The underlying suit, *W.S. Molnar Co. v. IKG Industries*, No. 93–CV–60028–AA (E.D.Mich.), *aff'd*, 82 F.3d 434, 1996 WL 128262 (Fed.Cir.) (unpublished disposition), brought by Molnar for patent infringement, was tried in May 1994. The individual defendants represented IKG at trial, and they moved at the close of Molnar's case for judgment as a matter of law (JMOL) under Fed. R.Civ.P. 50(a)(1) but did not specify the grounds for doing so, as required by Fed. R.Civ.P. 50(a)(2).[2] This motion was denied.

---

1. The law firm has not raised this defense, apparently because it agreed that the statute of limitations would be tolled as to it. See individual defendants' supporting brief at p. 3 n. 1.

2. Rule 50(a)(2) provides as follows:

Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

At the close of all the evidence, they again moved for JMOL but on the issue of infringement only, and only on the basis that IKG's product did not meet the hardness limitation in Molnar's patent claims. This motion was also denied.

On May 18, 1994, the jury returned its verdict for Molnar in the amount of $1,810,-000. On May 20, 1994, the court entered judgment on the verdict. After entry of the judgment, IKG filed several post-trial motions, including one that renewed its motion for JMOL, this time also specifying that it was relying on a "best mode" defense to the validity of Molnar's patents.[3] Molnar opposed the motion by pointing to IKG's violation of Rule 50(a)(2).

On or about August 13, 1994, Kerins sent a copy of Molnar's brief dealing with the Rule 50(a)(2) issue to Russel Swanger, Jr., a senior counsel in Harsco's legal department who was responsible for dealing with the Molnar patent litigation. Kerins also talked with Swanger about the issue sometime between August 15, 1994, and August 17, 1994, and sent him copies of both the IKG draft reply brief and final reply brief, which also addressed the Rule 50(a)(2) issue. The reply brief was filed on August 18, 1994.

On March 31, 1995, the district court denied IKG's post-trial motions. In doing so, it held that IKG had not properly preserved its right to move for JMOL on the basis of the best mode defense. On March 21, 1996, the Federal Circuit affirmed. Agreeing that IKG had waived its right to move for JMOL on that defense, the appellate court rejected the defense by examining it under a plain error standard of review.

The instant lawsuit was filed on October 1, 1996. Harsco alleges that the defendant lawyers were negligent when they failed to comply with Rule 50(a)(2) by not specifying the facts or the law on which they sought JMOL on the best mode defense, thereby causing the trial court and appellate court not to give this defense the full consideration it deserved. Harsco also alleges that, absent the

waiver, it would have prevailed on its best mode defense.

### III. *Discussion.*

 In Pennsylvania, a two-year period of limitations governs legal malpractice actions based in tort. *See Bailey v. Tucker,* 533 Pa. 237, 621 A.2d 108 (1993). Under what has sometimes been called the "occurrence rule," *see Robbins Seventko Orthopedic Surgeons, Inc. v. Geisenberger,* 449 Pa.Super. 367, 674 A.2d 244 (1996), the limitations period "commences at the time the harm is suffered...." *Bailey,* 533 Pa. at 252, 621 A.2d at 115. Alternatively, under the discovery rule, it may start when the injured party, in the exercise of reasonable diligence, knew or should have known of the injury. *Id.,* 621 A.2d at 252 and n. 15 (quoting *Pocono International Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 84, 468 A.2d 468, 471 (1983)). The discovery rule is a judicially created exception to the implicit statutory requirement that suit be brought within two years of injury or harm; it protects against a potential time-bar to suit if the harm could not have been reasonably discovered when it happened. *See Pocono International Raceway, supra,* 503 Pa. at 85, 468 A.2d at 471.

 The moving defendants rely on the discovery rule to contend that the limitations period started at the latest at the end of August 1994. In defendants' view, at that time Harsco would have known through the post-trial briefs and Kerins's conversation with Swanger about the Rule 50(a)(2) violation and the resulting injury, which was the May 18, 1994 jury verdict. Thus, they contend that a lawsuit filed on October 1, 1996, more than two years after August 1994, is untimely.

Conversely, Harsco argues that under the occurrence rule the cause of action did not accrue until March 31, 1995, the date the district court denied IKG's post-trial motions, because there was no harm until the court ruled on the motions. Alternatively, it argues that under the discovery rule March 31, 1995, is also the correct accrual date since

---

**3.** Under 35 U.S.C. § 112, a patent must set forth the "best mode" of the invention. If it fails to do so, the patent is invalid and cannot be infringed.

*See Spectra–Physics, Inc. v. Coherent, Inc.,* 827 F.2d 1524, 1537 (Fed.Cir.1987).

Harsco reasonably relied on the arguments of its lawyers that no violation had happened. The suit was therefore timely when it was filed within two years of this date.

The parties have cited applicable law. We believe *Bailey, supra,* and *Robbins, supra,* are dispositive of the motion.

In *Bailey,* the Pennsylvania Supreme Court used general principles of limitations law to decide when a cause of action accrued for a plaintiff (formerly a criminal defendant) suing his defense lawyer for malpractice in the underlying criminal case. The court stated:

> In the context of a criminal malpractice action, the time when the harm is suffered will, in the typical case, be easily identifiable, i.e., the date of sentencing.

*Bailey,* 533 Pa. at 252–53, 621 A.2d at 115–16. However, the court also observed that, under the discovery rule, the accrual date could be later than the sentencing date since a defendant may not recognize at sentencing that his injury resulted from his lawyer's conduct. Nevertheless, it decided that some definite date had to be set:

> The appropriate starting point is the termination of the attorney-client relationship, since at that point the aggrieved defendant is aware of the injury (i.e., the conviction), and is on clear notice to investigate any alternate cause of that harm which he believes to exist.

*Id.* at 253, 621 A.2d at 116 (footnote omitted)

The court recognized that its rule might "clog the civil dockets" but, citing cases stating that the purpose of the statute of limitations was to expedite litigation, decided it was "more important that we require these criminal defendants to file their claims within the statutory period to prevent any injustice to an attorney who has to defend a claim of malpractice many years after his relationship with the client ends." *Id.* at 253 n. 15, 621 A.2d at 116 n. 15.

This approach was consistent with the court's earlier comment in its opinion on the elements of a cause of action for legal malpractice in the criminal setting. The court had decided that one of the elements a criminal defendant had to prove as a civil plaintiff

was that "he ha[d] pursued post-trial remedies and [had] obtained relief which was dependent upon attorney error. ." *Id.* at 252, 621 A.2d at 115 (brackets added). It then stated:

> This requirement does not, however, relieve the plaintiff of his duty to initiate this cause of action within the statute of limitations period as hereinafter discussed, but it does raise a procedural question, to wit: what is to be done with a civil action filed prior to the completion of the post-conviction process? The answer is that an attorney defendant who is served with a complaint alleging professional malpractice for the handling of a criminal matter may interpose a preliminary objection on the grounds of demurrer. *See* Pa. R.C.P. No. 1017(b)(4). The trial court shall then reserve its ruling on said objection until the resolution of the post-conviction criminal proceedings.

*Id.* at 252 n. 13, 621 A.2d at 115 n. 13.

(The court did not actually have to apply its rule in the case before it, which was a consolidated appeal of two separate malpractice actions brought against criminal defense lawyers. Because of the extraordinary length of time the two plaintiffs had waited before suing their defense lawyers, both actions were time-barred simply by starting from the dates the plaintiffs had filed for collateral relief in their criminal actions. Both of those dates were more than two years before they filed their civil actions.)

In *Robbins, supra,* the Pennsylvania Superior Court extended *Bailey* to the noncriminal context, deciding that the statute of limitations was not tolled during administrative appeals of an IRS ruling that the pension plan the lawyer defendants had prepared was defective. Citing *Bailey* as authority for applying general principles of limitations law to the legal malpractice action before it, the court held that, under the discovery rule, the limitations period began to run from the date the IRS had notified the plaintiff that its pension plan was defective since this was the earliest date it could have known that it was injured. The action was therefore time-barred because it had been filed more than two years after this date.

In light of *Bailey* and *Robbins*, the moving defendants in the instant case argue that the claim against them is time-barred under the discovery rule. As noted above, they maintain that Harsco would have known about its injury at the latest by the end of August 1994, more than· two years before suit was filed.

In opposition, Harsco argues that the accrual date was March 31, 1995, the date the district court denied its post-trial motions, including the one based on the best mode defense. To elaborate on its occurrence-rule argument noted above, we note that the plaintiff maintains that under *Bailey, supra,* and *Garcia v. Community Legal Services Corp.,* 362 Pa.Super. 484, 524 A.2d 980 (1987), "a claim for legal malpractice ... does not begin to run ... until an initial adverse judgment in the underlying action" that is "appealable." (Opposition brief at pps. 3 and 5). As an alternative rationale for this date, the plaintiff argues that there was no injury until the denial of the post-trial motions because Molnar had not claimed waiver until proceedings on the post-trial motions, and there could not have been an injury until the court accepted the waiver argument.

We reject the plaintiff's contentions. *First, Bailey* certainly supports an accrual date of the "initial adverse judgment in the underlying action" since the date of a criminal sentencing would correspond to the date of the entry of a civil judgment. However, in this case the date would not have been March 31, 1995, but May 20, 1994, the date the court entered judgment on the jury's verdict. The May 1994 judgment was enforceable unless IKG obtained a stay, see Fed.R.Civ.P. 62(b), or Molnar abstained from executing on it. (We therefore reject the defendants' contention that the harm occurred upon entry of the jury's verdict.) Enforceability of the judgment is the important factor, not appealability. Second, the injury did not happen until the trial court ruled on Molnar's post-trial argument. Rather, the harm would have occurred at trial when the moving defendants failed to comply with Rule 50(a)(2), leading to the entry of the May 20, 1994 judgment.

Harsco also relies on the discovery rule in attempting to defeat the motion. Citing *Garcia,* it argues that it could not have known about its lawyers' negligence, or the fact or cause of injury, until the date the district court denied its post-trial motions. It bases this argument on Swanger's penalty-of-perjury declaration in which he avers that Harsco "looked to" the moving defendants and their law firm "for professional services in the *Molnar* Litigation" and that the defendants filed a brief in which they asserted that they had not violated Rule 50(a)(2), thereby creating reasonable reliance on the assertion of Harsco's lawyers that they had done nothing improper.

█ Initially, as the moving defendants point out, this argument is flawed because the discovery rule does not require, that the injured party know about the defendant's negligence before the limitations period begins to run. All that is necessary is that the injured party knew, or should have known, about its injury and that it was caused by the defendant's conduct. See *Navin v. Byrne,* 638 F.Supp. 263, 264–65 (M.D.Pa.1986) (Caldwell, J.).

Further, reliance on *Garcia* is misplaced. *Garcia* hinged on the fact that "even the most experienced attorney," 362 Pa.Super. at 495, 524 A.2d at 985, let alone the layperson plaintiff, would not have been able to conclude until it had been decided in litigation that the underlying claim was not governed by a 12–year limitations period rather than a 3– or 2–year period. Hence, under the discovery rule the limitations period for a malpractice action in *Garcia* did not begin to run until the plaintiff's attorney received the order dismissing the underlying claim on the basis of the statute of limitations. Accordingly, the superior court held that the malpractice lawsuit was untimely when it was filed against the plaintiff's previous lawyers more than two years after the attorney's receipt of the order.

In the instant case, on the other hand, the effects of the waiver could have been understood at the time Harsco had notice of it, especially since Swanger was a lawyer. Thus, since Swanger would have been on notice of the injury (the May 20, 1994 judg-

ment) and the moving defendants' conduct leading to that judgment (the failure to move properly for JMOL) at the latest lby the end of August 1994, we agree with the moving defendants that, under the discovery rule, the suit as against them is time-barred. *See also Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.,* 1997 WL 102521 (E.D.Pa.) (statute of limitations on legal malpractice claim began to run on the date in the underlying suit when plaintiffs were notified by the defendant lawyers of the latters' conduct indicating potential malpractice).

 We note that Harsco has also argued that the limitations period did not begin to accrue until after the appellate process was over because the individual defendants also argued on appeal that there was no waiver and Harsco relied on their judgment. Harsco states that "although it is unnecessary to address the point at length here, Harsco will take the position at trial that the discovery rule prevented the statute from beginning to run until after the Federal Circuit's ruling in 1996." (Opposition brief at p. 10).

We reject this argument because, once a moving party meets his evidentiary burden on summary judgment, the nonmoving party must present evidence that the moving party is not entitled to judgment, not argue that it will present its evidence at trial.

 Finally, Harsco contends that its complaint also set forth a claim for breach of contract against the moving defendants and that this claim is governed by a 4-year statute of limitations under 42 Pa.C.S.A. § 5525. We have examined the complaint and clearly it alleges only a claim in negligence against the defendants. However, since a party can sue for malpractice in contract as well as in tort, *see Bailey, supra,* we will entertain a motion to file an amended complaint. Any proposed amended complaint shall be attached to the motion.

### ORDER

AND NOW, this 25th day of April, 1997, it is ordered that:

1. The motion of defendants, John C. Kerins and Edward J. Kondracki, for summary judgment (doc. 14) is granted.

2. The Clerk of Court shall enter judgment in favor of defendants, John C. Kerins and Edward J. Kondracki, and against plaintiff.

3. The plaintiff is granted leave to file a motion to file an amended complaint setting forth a claim in contract against Kerins and Kondracki. Any such motion shall be filed within 20 days of the date of this order.