J-S41032-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RIVERSIDE MANAGEMENT GROUP, LLC AND FRED ONORATO AND EDWINA ONORATO, H/W | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : | |
| v. | : : | |
| HOWARD A. FINKELMAN, ESQUIRE AND BOCK AND FINKELMAN, P.C. | : : : | |
| Appellees | : | No. 3407 EDA 2017 |

Appeal from the Judgment Entered October 13, 2017
In the Court of Common Pleas of Delaware County
Civil Division at No(s):  2012-08630

BEFORE:   GANTMAN, P.J., OLSON, J., and STEVENS*, P.J.E.

MEMORANDUM BY GANTMAN, P.J.:                **FILED DECEMBER 17, 2018**

Appellants, Riverside Management Group, LLC ("RMG"), Fred Onorato, and Edwina Onorato, appeal from the judgment entered in the Delaware County Court of Common Pleas in favor of Appellees, Howard A. Finkelman and Bock and Finkelman, P.C., in this legal malpractice action.  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts of this case.  Therefore, we will only summarize them here.  In 2009, Thomas C. Phelan, a client of Appellees, solicited the Onorato Appellants to become members of Collina Investment Group, LLC ("Collina").  Collina was also a client of Appellees, and was a real estate management group that included Mr. Phelan, Dr. Lawrence P. Wean, and Dr. Andrew Rosen.  On June 2, 2009, the Onorato Appellants signed promissory notes, secured by

_____
*   Former Justice specially assigned to the Superior Court.

mortgages, on several of their properties in favor of Dr. Wean. The Onorato Appellants believed the promissory notes and mortgages were merely a good faith assurance by the Onorato Appellants that they intended to invest with Collina, and that the notes and mortgages would not actually be used. On December 7, 2009, however, Dr. Wean sought to disassociate himself from Collina, and filed a complaint in confession of judgment against the Onorato Appellants in the amount of $770,000.00 on the notes. After the Onorato Appellants expended large sums of money in attorney's fees in an attempt to have the judgment opened, Mr. Phelan introduced the Onorato Appellants to Appellees, and recommended the Onorato Appellants retain Appellees as new counsel to enter into a settlement agreement with Dr. Wean. Despite Appellees' purported conflict of interest in the representation of Mr. Phelan in cases which created an irreconcilable conflict of interest between Mr. Phelan and the Onorato Appellants, as well as between Appellees and the Onorato Appellants, Appellees represented Mr. Phelan, Collina, Dr. Rosen, and the Onorato Appellants in a settlement with Dr. Wean on July 20, 2010. As part of the settlement agreement, the Onorato Appellants executed a deed in favor of Dr. Wean for a property located at 450 Cherry Tree Road in Upper Chichester Township to be held in escrow until a future time. Dr. Wean, however, recorded the deed that transferred the Cherry Tree property to his name on October 6, 2011.

Additionally, the Onorato Appellants, Mr. Phelan, and Drs. Wean and

Rosen, formed Appellant RMG on August 31, 2010. Mr. Phelan and Drs. Wean and Rosen pressured the Onorato Appellants to contribute properties to RMG and the Onorato Appellants complied. On October 15, 2010, Appellees represented Mr. Phelan and the Onorato Appellants in a transaction in which RMG borrowed $1,750,000.00 from Penn Business Credit (now Fulton Bank) against the properties provided by the Onorato Appellants. On May 17, 2012, Penn/Fulton filed a complaint for judgment by confession against RMG in the Delaware County Court of Common Pleas, and on the same date, the court entered a judgment by confession against RMG in the amount of $2,076,393.60. As a result, Penn/Fulton began foreclosure proceedings against the properties contributed by the Onorato Appellants to RMG as collateral for the loan. On June 13, 2012, Penn/Fulton also commenced an action directly against Appellant Fred Onorato which sought judgment on his personal guaranty of the Penn/Fulton loan.

Procedurally, we add that the Onorato Appellants filed a writ of summons against Appellees on October 10, 2012. On July 18, 2013, the Onorato Appellants filed a complaint against Appellees for legal malpractice. Appellees filed preliminary objections to the complaint on September 16, 2013. On October 7, 2013, Appellants (now including RMG) filed an amended complaint against Appellees for breach of contract, legal malpractice, breach of fiduciary duty, and *respondeat superior* liability. Appellees filed preliminary objections to the amended complaint on October 28, 2013, and Appellants

filed an answer to Appellees' preliminary objections on November 13, 2013. The court overruled Appellees' preliminary objections to the amended complaint on February 10, 2014.

On August 25, 2014, Appellees filed an answer and new matter to the amended complaint. Appellants filed a reply to Appellees' new matter on October 23, 2014, and Appellees filed preliminary objections to Appellants' reply to the new matter on October 14, 2015. On November 6, 2015, Appellants answered Appellees' preliminary objections. The court sustained Appellees' preliminary objections to Appellants' reply to the new matter on January 13, 2016. On March 8, 2016, Appellants filed an amended reply to Appellees' new matter, and Appellees filed preliminary objections to the amended reply on March 28, 2016. Appellants filed a 2nd amended reply to Appellees' new matter on June 17, 2016.

On June 7, 2017, Appellees filed a motion for judgment on the pleadings, and Appellants filed a response in opposition on June 27, 2017. On September 18, 2017, the court granted Appellees' motion for judgment on the pleadings. Appellees filed a *praecipe* for entry of judgment against Appellants, and judgment in favor of Appellees and against Appellants was entered on October 13, 2017. On the same day, Appellants filed a timely notice of appeal. On October 18, 2017, the court ordered Appellants to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); Appellants timely complied on November 8, 2017.

Appellants raise the following issue for our review:

DID THE [TRIAL COURT] COMMIT LEGAL ERROR AND/OR ABUSE ITS DISCRETION, BY ENTERING JUDGMENT ON THE PLEADINGS IN FAVOR OF [APPELLEES] AND AGAINST [APPELLANTS], BASED ON THE PURPORTED APPLICATION OF THE RELEVANT STATUTE OF LIMITATIONS AND/OR…[APPELLANTS]' PURPORTED FAILURE TO ESTABLISH VIABLE CLAIMS IN THIS ACTION ASSERTING PROFESSIONAL NEGLIGENCE, BREACH OF CONTRACT, AND BREACH OF FIDUCIARY DUTY?

(Appellants' Brief at 3).

Appellants argue their claims concerning the losses of the Cherry Tree property and the properties they contributed to RMG should not have been time-barred. Regarding the loss of the Cherry Tree property, Appellants contend the earliest date they could have known from public records that they had suffered an actual loss was October 6, 2011, when Dr. Wean recorded the deed for the property. Appellants maintain the trial court should have used the October 6, 2011 date, instead of the July 20, 2010 date of the execution of the Wean settlement agreement, to calculate the 2-year statute of limitations for their negligence action against Appellees. Similarly, Appellants assert the earliest date they could have known from public records that they suffered a loss of the properties Appellants contributed to RMG, occurred during 2012, when Penn Business Credit began to foreclose on the properties. Appellants claim the trial court should have used August 2012, rather than the October 15, 2010 date of execution of the Penn Business Credit loan settlement, to determine the 2-year statute of limitations period for their

negligence claim against Appellees. Appellants reason that if the correct dates had been used, their claims would not have been time-barred.

Appellants also allege the trial court applied the wrong legal standard for judgment on the pleadings and improperly ruled that Appellants' complaint failed to make out a cause of action on their claims of professional negligence. Appellants contend that their amended complaint provided sufficient facts to support the basic elements of each of their asserted causes of action. Appellants complain the trial court should not have granted Appellees' motion for judgment on the pleadings; instead, Appellants' submit their case should have proceeded to trial. Appellants conclude this Court should reverse and remand for a trial on the merits of the case.

The applicable scope and standard of review are as follows:

> Our scope of review on an appeal from the grant of judgment on the pleadings is plenary. Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings. A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. In determining if there is a dispute as to facts, the [trial] court must confine its consideration to the pleadings and relevant documents. On appeal, we accept as true all well-pleaded allegations in the complaint.
>
> On appeal, our task is to determine whether the trial court's ruling was based on a clear error of law or whether there were facts disclosed by the pleadings, which should properly be tried before a jury, or by a judge sitting without a jury.

> Neither party can be deemed to have admitted either conclusions of law or unjustified inferences. Moreover, in conducting its inquiry, the [trial] court should confine itself to the pleadings themselves and any documents or exhibits properly attached to them. It may not consider inadmissible evidence in determining a motion for judgment on the pleadings. Only when the moving party's case is clear and free from doubt such that a trial would prove fruitless will an appellate court affirm a motion for judgment on the pleadings.

**Consolidation Coal Co. v. White**, 875 A.2d 318, 325-26 (Pa.Super. 2005) (internal citations and quotation marks omitted).

For a professional (legal) negligence claim, the plaintiff must establish three elements: (1) the employment of the attorney or other basis for duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) the attorney's failure to exercise the requisite skill and knowledge was the proximate cause of damage to the plaintiff. **Bailey v. Tucker**, 533 Pa. 237, 246, 621 A.2d 108, 112 (1993). "An attorney will be deemed 'negligent' if he…fails to possess and exercise that degree of knowledge, skill and care which would normally be exercised by members of the profession under the same or similar circumstances." **Fiorentino v. Rapoport**, 693 A.2d 208, 212 (Pa.Super. 1997), *appeal denied*, 549 Pa. 716, 701 A.2d 577 (1997).

> By way of comparison, an assumpsit claim based on breach of an attorney-client agreement is a contract claim, and the attorney's liability must be assessed under the terms of the contract. [**Bailey, supra**] at 251, 621 A.2d at 115. Thus, if the attorney agrees to provide his…best efforts and fails to do so, an action in assumpsit will accrue. **Id.** "[A]n attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at

- 7 -

large." *Id.* at 251-52, 621 A.2d at 115.

*Id.* at 213. As a general rule, to succeed in a cause of action for breach of contract the plaintiff must establish: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Gorski v. Smith*, 812 A.2d 683, 692 (Pa.Super. 2002), *appeal denied*, 579 Pa. 692, 856 A.2d 834 (2004).

With respect to a breach of fiduciary duty claim, "a confidential relationship and the resulting fiduciary duty may attach wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest." *Basile v. H & R Block, Inc.*, 777 A.2d 95, 101-02 (Pa.Super. 2001), *appeal denied*, 569 Pa. 714, 806 A.2d 857 (2002). The fiduciary duty owed by an attorney arises from either an express or implied attorney-client relationship. *See Estate of Pew*, 655 A.2d 521, 545 (Pa.Super. 1994).

> The [Pennsylvania] Supreme Court [has] held that part of the fiduciary duty which arises out of the attorney client relationship is that of undivided loyalty. This duty, the Court emphasized, prohibits an attorney from engaging in activity which constitutes a conflict of interest, and the Court held that a breach of that duty by the attorney is actionable.

*Gorski, supra* at 711.

> [T]he substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, *e.g.*, for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—*i.e.*, a specific promise to do something that a party would not

ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

**Bruno v. Erie Ins. Co.**, 630 Pa. 79, 112, 106 A.3d 48, 68 (2014) (internal citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Charles B. Burr, II, we conclude Appellants' issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (**See** Trial Court Opinion, filed January 16, 2018, at 23-31) (finding: Appellants assert professional malpractice claims for breach of contract in Count I and in tort in Court II; Appellants attached to pleadings no written retainer agreement but contended parties had oral representation agreement; Appellants claimed Appellees breached representation agreement by failing to conform with general standard of care for attorneys in representing clients, which constitutes professional negligence; Appellants alleged in Count I that Appellees failed to impart critical information when Appellants entered into their arrangement with Appellees, but did not identify what information was asked for but not disclosed; Count I for breach of contract amounts to tort claim, absent averment of breach of specific contracted-for instructions; therefore, Appellants' Counts I and II were both professional negligence claims

sounding in broader social duty and subject to two-year statute of limitations; further, Appellants have not disputed that statute of limitations for their claims for breach of fiduciary duty against Appellees and *respondeat superior* against Appellee law firm is also two years; as to when statute of limitations period began to run, lost properties Appellants claimed as damages were lost because Appellant RMG defaulted on its loan payment obligation, which Appellant Mr. Onorato guaranteed, in order to accomplish settlement of confession of judgment action; additionally, Appellants have stipulated out of this case their claims against Appellees arising from escrow (*e.g.*, the Cherry Tree property) and disbursement of loan proceeds; further, insofar as judgment confessed against Appellant Mr. Onorato concluded with settlement, it cannot form basis of viable claim against Appellees that Appellees caused involuntary loss of properties; with no other damages established, Appellants' claims against Appellees for professional malpractice (conflict, nondisclosure, and breach of fiduciary duty) and *respondeat superior* date back to when Appellants hired Appellees in July 2010, which is triggering date for statute of limitations). Accordingly, we affirm on the basis of that opinion.

Judgment affirmed.

Judge Olson files a concurring memorandum in which President Judge Emeritus Stevens concurs in the result.

President Judge Emeritus Stevens concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/17/18</u>

## IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
## CIVIL ACTION - LAW

RIVERSIDE MANAGEMENT GROUP, LLC, : NO. 12-008630
and FRED ONORATO and : PA Superior Court Docketing No. 3407 EDA 2017
EDWINA ONORATO, h/w :
                                       :
           V. :
                                         :
HOWARD A. FINKELMAN, ESQUIRE and :
BOCK AND FINKELMAN, P.C. :

DONALD J. WEISS, ESQUIRE and MARC A. ZAID, ESQUIRE, Attorneys for the Plaintiffs.
JEFFREY B. McCARRON, ESQUIRE and CANDIDUS K. DOUGHERTY, ESQUIRE,
   Attorneys for the Defendants.

## OPINION

BURR, S.J.                                              FILED:     January 16, 2018

The Plaintiffs, Riverside Management Group, LLC ("Riverside") and Fred and Edwina Onorato, h/w, have appealed from this Court's Order of September 14, 2017 granting the Motion of the Defendants, Howard A. Finkelman, Esquire and Bock and Finkelman, P.C., for Judgment on the Pleadings and dismissing, with prejudice, the Plaintiffs' Amended Complaint in this professional negligence action for raising non-viable claims against the Defendants that were not otherwise time barred.

This action was initiated by the Onorato Plaintiffs *via* a Writ of Summons filed on October 10, 2012 followed by the filing of a Complaint on July 18 2013, and then an Amended Complaint adding Riverside Management Group as a Plaintiff being filed on October 7, 2013 subsequent, respectively, to the Defendants' initial Preliminary Objections, after which Preliminary Objections to the Plaintiffs' Amended Complaint were overruled by the Honorable

James F. Proud of this court. The Plaintiffs alleged in their Amended Complaint[1] that, in the Spring of 2009, they were the owners of the following Delaware County commercial properties: 2604 W. Second Street, Chester, Pennsylvania; 20-22 Jeffrey Street, Chester, Pennsylvania; NE Corner, Delaware Avenue and Engle Street, Chester, Pennsylvania; 17 and 19 Bryam Street, Chester, Pennsylvania; 15 Engle Street, Chester, Pennsylvania; 7 Front Street, Chester, Pennsylvania; and 612 MacDade Boulevard, Collingdale, Pennsylvania ("the Properties"). (Amended Complaint, Paragraph 6). Plaintiffs alleged that, during this same time, they were contacted by a client of the Defendant attorney and law firm, Thomas C. Phelan, who represented to Plaintiffs that he was part of Collina Investment Group, LLC ("Collina"), that included Dr. Lawrence P. Wean and Dr. Andrew Rosen, and was also a client of the Defendants. (*Id.*, Paragraphs 7-11). Plaintiffs contended that, when Dr. Wean sought to dissociate himself and receive compensation for his contributions to Collina from Mr. Phelan and Dr. Rosen, also in the Spring of 2009, Mr. Phelan solicited the Plaintiffs to become members of Collina. (*Id.*, Paragraphs 12-13).

The Plaintiffs further averred that, on or about June 2, 2009, Mr. Phelan and Dr. Wean induced them to execute promissory notes, secured by mortgages, in favor of Dr. Wean on the Properties as follows [sic]: (a) Plaintiffs never received any money in exchange for the promissory notes or mortgages; (b) Plaintiffs were informed by Mr. Phelan, Dr. Wean, and his counsel that the promissory notes and mortgages were merely a good faith assurance by Plaintiffs that they intended to invest with Mr. Phelan, Dr. Wean and Dr. Rosen in their real estate management business; (c) Plaintiffs were informed by Dr. Wean and his counsel that the notes and mortgages would be destroyed once Dr. Wean was given assurances that Plaintiffs

---

[1] The following recapitulation of the Plaintiffs' Amended Complaint reflects redactions therefrom pursuant to an agreed upon stipulation by counsel for the parties.

2

would invest with Mr. Phelan and Drs. Wean and Rosen; (d) Dr. Wean's counsel personally appeared at Plaintiffs' residence on June 2, 2009 and presented Plaintiffs with a demand mortgage note in the principal amount of $550,000.00 and presented an additional demand mortgage note in the sum of $220,000.00; (e) On June 2, 2009, Dr. Wean and his counsel requested that Plaintiffs sign the notes immediately as a gesture of good faith; (f) Plaintiffs did not understand the terms of the notes; (g) Dr. Wean and his counsel refused Plaintiffs the opportunity to review the notes or consult with counsel regarding the Notes and insisted that Defendants [sic] immediately sign the Notes based on Plaintiff [sic] and his attorney's assurances and representations; (h) Plaintiffs never received any consideration whatsoever from Dr. Wean for signing the notes. (*Id.*, Paragraph 14, *passim*).

Plaintiffs went on to allege in their Amended Complaint that, on or about December 7, 2009, after promising not to do so, Dr. Wean filed a Complaint in Confession of Judgment and entered judgment against them in the amount of $770,000.00 on the [N]otes. (*Id.*, Paragraph 15). The Plaintiffs averred that: "[a]s a result of Plaintiff [sic] wrongfully confessing judgment against them on the Notes, Defendants [sic] were forced to expend large sums of money in attorney's fees in an attempt to have the judgment opened." (*Id.*, Paragraph 16). Plaintiffs contended that Mr. Phelan introduced them to the Defendant attorney and recommended that they retain the Defendant to enter into a settlement agreement with Dr. Wean. (*Id.*, Paragraph 17). Plaintiffs alleged that the Defendant attorney did not advise them that he and the Defendant law firm represented Mr. Phelan in cases which created an irreconcilable conflict of interest between Mr. Phelan and the Plaintiffs and the Defendant attorney and the Plaintiffs. (*Id.*, Paragraph 18). Plaintiffs contended that, despite his conflict of interest, the Defendant attorney represented Mr. Phelan, Collina, Dr. Rosen and Plaintiffs in a settlement with Dr. Wean on July

3

20, 2010 titled "Cooperation, Settlement and Mutual Release Agreement" ("Release"), Section 11(g) of which provides that the Defendant attorney was representing Mr. Phelan, Collina, Dr. Rosen and Plaintiffs. (*Id.*, Paragraphs 19-20). Plaintiffs added that, as there was no consideration for Plaintiffs to sign the original notes, likewise there was no consideration to sign the Release. (*Id.*, Paragraph 21).

Plaintiffs additionally complained that they executed a Deed in favor of Dr. Wean for real property at 450 Cherry Tree Road, Upper Chichester Township, Delaware County, Pennsylvania, being folio number 09 00 0025501 ("Cherry Tree Property") to be held in escrow until a future time period, and a deed was recorded by Dr. Wean transferring the Cherry Tree Property into his name on or about October 6, 2011. (*Id.*, Paragraphs 22-23). Plaintiffs averred that the Plaintiff, Riverside, whose members were Plaintiff, Fred Onorato, Mr. Phelan and Drs. Wean and Rosen, was formed on or around August 31, 2010, and that Mr. Phelan and Drs. Wean and Rosen pressured the Plaintiffs to contribute properties to Riverside and that the Plaintiffs complied therewith. (*Id.*, Paragraphs 25-26). The Plaintiffs alleged that the Defendant attorney represented Mr. Phelan and Plaintiffs in a transaction in which the Plaintiff, Riverside, borrowed One Million Seven Hundred Fifty Thousand Dollars ($1,750,000.00) from Penn Business Credit, now Fulton Bank, against the Properties provided by the Plaintiffs. (*Id.*, Paragraph 27).

The Plaintiffs contended in their Amended Complaint that, on May 17, 2012, Penn/Fulton filed a Complaint for Judgment by Confession against the Plaintiff, Riverside, in the Court of Common Pleas of Delaware County, Pennsylvania, Docket No. 12-4155, and on the same date, the Court entered a Judgment by Confession against the Plaintiff, Riverside, in the amount of $2,076,393.60 and Penn/Fulton began foreclosure proceedings against the Properties contributed by Plaintiffs to Riverside as collateral for the loan. (*Id.*, Paragraph 34). Plaintiffs

4

averred that, on June 13, 2012, Penn/Fulton also commenced an action directly against the Plaintiff, Fred Onorato, in the Court of Common Pleas of Delaware County, Pennsylvania, under Docket No. 12-5010, which action seeks judgment on his personal Guaranty of the Penn/Fulton loan. (*Id.*, Paragraph 35). The Plaintiffs alleged that, as a direct result of the Defendant attorney's negligence, Plaintiffs lost not only the properties they contributed to the Plaintiff, Riverside, but have also been subjected to the loss of additional property on the personal Guaranty given in connection with the Penn/Fulton loan to the Plaintiff, Riverside. (*Id.*, Paragraph 36). Plaintiffs contended that, as a direct result of the Defendant attorney's negligence, they signed the Release with Dr. Wean in July 2010 whereby Plaintiffs executed a Deed to Dr. Wean for the real property at 450 Cherry Tree Road, Upper Chichester Township, Delaware County, Pennsylvania resulting in Dr. Wean becoming the equitable owner of that property. (*Id.*, Paragraphs 37-38). Plaintiffs claimed that they first became aware of damages they suffered from the Defendant attorney's negligence in or around August of 2012, and filed a writ of summons against the Defendant attorney and law firm in this court on October 10, 2012, which writ was served on the Defendants on October 16, 2012 by the Sheriff of Delaware County, Pennsylvania. (*Id.*, Paragraphs 39-40).

The Plaintiffs charged both of the Defendants in Count I of their Amended Complaint with Breach of Contract, contending that they were asserting a professional negligence action in breach of contract arising from Defendants' failure to provide competent counsel under their contract for legal services with the Plaintiffs. (*Id.*, Paragraph 42). Plaintiffs alleged that an oral contract for legal services was formed between Defendants and Plaintiffs by which law and custom required that the Defendants direct their representation of Plaintiffs with zeal, competence and sound legal ethics. (*Id.*, Paragraph 43). Plaintiffs averred that Defendants

had a contractual duty to ensure that Plaintiffs' interests were represented in the execution of the Release and the Riverside/Penn Business Credit loan, and this contractual duty required that Defendants direct their representation of the Plaintiffs consistent with the applicable standard of care required of a Pennsylvania lawyer engaged in similar activity. (*Id.*, Paragraph 44). Plaintiffs alleged that, consistent with the foregoing contractual duty, if Defendants were unable to fulfill their contractual duties to Plaintiffs in the representation of their interests in the execution of the Release and the Riverside/Penn Business Credit Loan, then by law Defendants were obliged to withdraw as counsel for Plaintiffs and direct Plaintiffs to obtain different counsel. (*Id.*, Paragraph 45).

According to Count I of the Plaintiffs' Amended Complaint, the Defendants breached their contract for legal services with Plaintiffs by their deviation from the applicable standard of care of a Pennsylvania attorney as follows: (1) advising Plaintiffs to execute the Release which was contrary to their interests; (2) failing to disclose their conflict of interest in representing Mr. Phelan, whose interests were adverse to Plaintiffs', in the above transactions; and (3) failing to direct Plaintiffs to obtain different counsel to represent their interests in the Release and the Riverside/Penn Business Credit Loan. (*Id.*, Paragraph 46, *passim*).

In Count II of their Amended Complaint, the Plaintiffs charged the Defendant attorney with professional negligence arising from his negligent deviation from the standard of care expected of Pennsylvania lawyers after being engaged by the Plaintiffs to provide legal services, alleging that he owed a duty of care to provide them with competent legal services and consistent with the applicable standard of care required of a Pennsylvania lawyer engaged in the provision of similar services. (*Id.*, Paragraphs 49-51). The Plaintiffs averred that the Defendant attorney deviated from the applicable standard of care required of Pennsylvania lawyers through

6

his negligence as follows: advising Plaintiffs to execute the Release which was contrary to their interests, and failing to disclose his conflict of interest in representing Mr. Phelan, whose interests were adverse to the Plaintiffs' in the above transactions. (*Id.*, Paragraph 52, *passim*).

The Plaintiffs' pleaded a claim of Breach of Fiduciary Duty against the Defendant attorney in Count III of their Amended Complaint, alleging that, under common law, the Defendant attorney owed Plaintiffs the fiduciary duty of honesty, fidelity and loyalty that Plaintiffs would always be in a position to make informed decisions regarding the Defendant attorney's representation, and that the Defendant attorney had a further fiduciary duty to provide Plaintiffs with skillful, diligent, competent and professional legal advice and to take appropriate and professional legal actions. (*Id.*, Paragraph 55). Plaintiffs contended that the Defendant attorney breached the fiduciary duty of loyalty owed to Plaintiffs by placing his own professional and pecuniary interests above the duty of honesty and fidelity that he owed to the Plaintiffs in failing to disclose his conflict of interest through his representation of Mr. Phelan. (*Id.*, Paragraph 56). The Plaintiffs raised a claim of Respondeat Superior against the Defendant law firm in Count IV of their Amended Complaint with the contention that, at all relevant times, since the Defendant attorney was acting within the scope of his employment with the Defendant law firm, under the doctrine of Respondeat Superior, the firm is fully liable for all of the acts and omissions of the Defendant attorney identified in the Amended Complaint. (*Id.*, Paragraph 59). (Plaintiffs' Amended Complaint, pp. 1-12).

The Defendants' Motion for Judgment on the Pleadings set forth the following grounds for their requested relief:

"This is a legal malpractice action [brought] by the [P]laintiffs, Fred and Edwina Onorato (collectively the 'Onoratos'), and Riverside Management Group, LLC ('Riverside') against [D]efendants, Howard A. Finkelman and Bock and Finkelman, P.C. (collectively '[D]efendants'), arising from the [D]efendants' representation of the Onoratos in connection with

7

a settlement agreement and a loan obtained by Riverside. Amended [C]omplaint, attached hereto as Exhibit 'A'. (*Id.*, Paragraph 1). While Riverside was identified as a [P]laintiff, Riverside did not actually allege any claims against [D]efendants and was not included in the definition of '[P]laintiffs' in the [A]mended [C]omplaint. *See* Exhibit 'A' at ¶ 1. (*Id.*, Paragraph 2). The Onoratos asserted claims against [D]efendants characterized as a breach of contract ([C]ount I), negligence ([C]ount II), breach of fiduciary duty ([C]ount III) and respondeat superior ([C]ount IV). (*Id.*, Paragraph 3).

The Defendants contended in this Motion that they had filed Preliminary Objections both to the Plaintiffs' Complaint and Amended Complaint alleging lack of specificity of the pleadings and failure to include a copy of the contract on which the Plaintiffs' claims were based and that their Preliminary Objections were overruled. (*Id.*, Paragraphs 38-43). Defendants asserted that they raised the statute of limitations as a defense in New Matter to their Answer to the Amended Complaint and that the Plaintiffs had denied the action was untimely, but did not raise the discovery rule or fraudulent concealment in any of their responsive pleadings to the Defendants' claims. (*Id.*, Paragraphs 48-53; Exhibits B – Defendants' New Matter; F – Plaintiffs' Reply to New Matter; G – Plaintiffs' Amended Reply to New Matter).

The Defendants maintained in their Motion for Judgment on the Pleadings that, during the taking of the Plaintiff's, Fred Onorato, deposition, the parties had entered into stipulations to remove the following claims and paragraphs from the Amended Complaint:

- Any claim derivative of, based on, or involved in the escrow agreement signed by the Plaintiffs in 2010 (*Id.*, citing to Exhibit H appended thereto - Fred Onorato Deposition at 2/27/17 N.T 1063; Defendants' Exhibit 20);

- A claim or criticism of Defendants based on a derivative use of the proceeds from the Penn Business Credit loan made to the Plaintiff, Riverside Management Group (*Id.*, 2/28/17 N.T. 1164);

- Plaintiffs acknowledge the disbursements from the Penn Business Credit Loan proceeds were appropriate and authorized, and Defendants did not mismanage the escrow account (*Id.*, 2/27/17 N.T. 1063; 2/28/17 N.T. 1164; 3/23/17 N.T. 1197);

- As it relates to the Amended Complaint, all references to the escrow agreement are stricken – Paragraphs 28-33, 46(b)-(c) and 52(b)-(c) are stricken in their entirety from the Amended Complaint. (*Id.*, 2/27/17 N.T 1063; 3/23/17 N.T. 1197 and 1313). (*Id.*, Paragraphs 54-57).

Based upon the foregoing stipulations, Defendants described the Plaintiffs' claims remaining against them as follows:

- Defendants breached their contract for legal services with Plaintiffs by their deviation from the applicable standard of care of a Pennsylvania attorney, as follows: (a) advising Plaintiffs to execute the Release which was contrary to their interests; (b) failing to

8

disclose their conflict of interest in representing Mr. Phelan, whose interests were adverse to Plaintiffs, in the above transaction; and (c) failing to direct Plaintiffs to obtain different counsel to represent their interests in the Release and the Riverside/Penn Business Credit loan.

- The Defendant attorney, Mr. Finkelman, deviated from the applicable standard of care required of Pennsylvania lawyers through negligence as follows: (a) advising Plaintiffs to execute the Release which was contrary to their interests; and (d) failing to disclose [his] conflict of interest in representing Mr. Phelan, whose interests were adverse to Plaintiffs in the above transactions.

- The Defendant attorney, Mr. Finkelman breached the fiduciary duty of loyalty he owed Plaintiffs by placing his own professional and pecuniary interests above the duty of loyalty, honesty and fidelity that he owed Plaintiffs in failing to disclose his conflict of interest through his representation of Mr. Phelan. (Defendants' Motion for Judgment on the Pleadings, Paragraph 58, *passim*, citing to Plaintiffs' Amended Complaint, appended thereto as Exhibit A, Paragraphs 46, 52 and 56, as amended by the stipulations hereinabove cited as reflected in Exhibit H appended to Defendants' Motion for Judgment on the Pleadings).

The Defendants further averred in this Motion that the Onorato Plaintiffs' claims alleging negligence (Count II), breach of fiduciary duty (Count III) and respondeat superior (Count IV) are time barred for being tort claims subject to a two year limitations period pursuant to 42 Pa.C.S.A. § 5524(7),[2] and that the Count I claim of "a professional negligence action in breach of contract" alleging a breach of the requisite standard of care sounds in tort, rather than in contract, and should also be subject to a two year limitations period. (Defendants' Motion for Judgment on the Pleadings, Paragraphs 66-69, 84-86, 91-92). The Defendants contended that, although the alleged breaches arising from the Release and conflict of interest had to occur prior to the Onorato Plaintiffs' execution of the Release concluding the settlement with Dr. Wean on July 20, 2010, the Onorato Plaintiffs did not plead the date on which they retained the

---

[2] 42 Pa.C.S.A. § 5524. Two year limitation
*****

9

Defendants nor when they believed the Defendants were required to inform them of the putative conflict of interest. (*Id.*, Paragraphs 118-120). Instead, the Onorato Plaintiffs did not contend that they were unaware of the terms of the Release on July 20, 2010, but brought suit on grounds that the Defendants should have, but did not tell them not to enter into it on July 20, 2010. (*Id.*, Paragraphs 121-122). Therefore, Defendants maintained that, because this action was not initiated until October 10, 2012, it is more than two years past the limitations period that began on the Release execution date of July 20, 2010. (*Id.*, Paragraph 123). Similarly, according to the Defendants, Plaintiffs' suggestion of a cause of action arising from the Plaintiff's, Fred Onorato, personal guaranty of the Penn Business Credit loan, the proceeds of which were intended to pay Dr. Wean pursuant to the Release, related back to that transaction that took place on July 20, 2010. (*Id.*, Paragraphs 124-127). The Defendants contended that, to the extent that the execution of the personal guaranty represents a separate transaction, the trigger date for the applicable limitations period was not pleaded in the Amended Complaint, nor did the Plaintiffs ever provide it during successful litigation of the Defendants' Preliminary Objections that were overruled by the court. (*Id.*, Paragraphs 128-130). Finally, Defendants maintained that the Plaintiff, Riverside Management Group, did not assert any claims against the Defendants until the filing of the Amended Complaint on October 7, 2013, or more than two years after the Penn Business Proceeds loan settled on October 15, 2010, and that these also, were untimely. (*Id.*, Paragraph 131).

As for the substantive merit of the Plaintiffs' pleadings in the Amended Complaint, the Defendants averred that Plaintiffs did not plead all of the elements necessary to establish causes of action for professional negligence, negligent breach of a legal representation contract

---

(7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except

10

and actual loss. (*Id.*, Paragraphs 147-149). Defendants contended that Riverside did not exist when the Release was signed on July 20, 2010, nor was it named a Plaintiff until the filing of the Amended Complaint wherein the Defendants' complained of conduct related solely to the Onorato Plaintiffs. (*Id.*, Paragraphs 151-153). Hence, according to the Defendants, Riverside, which was not formed until August 31, 2010, cannot have a claim against the Defendants arising from the Release nor a conflict of interest that arose not later than the time of the execution of the Release. (*Id.*, Paragraphs 154-158). Likewise, since the personal guaranty claim of the Plaintiff, Fred Onorato, is based upon his liability for the default upon a loan made to Riverside and a claim for damages arising from its enforcement by the lender, it cannot form the basis for a claim by Riverside against the Defendants. (*Id.*, Paragraphs 159-162). Moreover, having stipulated to having no cause of action related to the treatment and distribution of the foregoing Penn Business Credit loan proceeds and the handling of the escrow, Plaintiffs have removed all such allegations from the Amended Complaint. (*Id.*, Paragraphs 163-181).

The Defendants further contended in the within Motion that the Amended Complaint sets forth no factual allegations establishing the formation of an attorney-client relationship between Riverside and the Defendants, nor any causative nexus between Defendants' conduct and the foreclosure of the properties subsequent to the Plaintiff's, Fred Onorato, default in repayment of the loan to Riverside. (*Id.*, Paragraphs 182-198). In addition, the Defendants averred that, because the Plaintiff, Fred Onorato, has not pleaded an actual loss stemming from his personal guaranty on the Penn Business Credit loan, this cause of action is non-cognizable. (*Id.*, Paragraphs 199-219). As for the Plaintiffs' claim of the Defendants' breach of fiduciary duty for failure to disclose their representation of Mr. Phelan, the Defendants contended that the Plaintiffs' pleadings in the Amended Complaint admit that the Plaintiffs were

an action or proceeding subject to another limitation specified in this subchapter. *Id.*

11

referred to the Defendants by Mr. Phelan and dismissed their prior lawyers so as to employ the Defendants in the matter of the execution of the Release disposing of the claims of Dr. Wean. (*Id.*, Paragraphs 220-239). In the Defendants' view, besides failing to plead a cognizable claim of breach of fiduciary duty against them, the Plaintiffs have not established in the Amended Complaint that the Defendants failed to disclose a matter of which the Plaintiffs were themselves unaware. (*Id.*, Paragraphs 239-258).

The Plaintiffs, Riverside and the Onoratos, filed an Answer to the Defendants' Motion for Judgment on the Pleadings in which they admitted that Collina Investment Group and Mr. Phelan were represented by the Defendants in the matter of the Release with Dr. Wean, and that they had not alleged that the Defendants were involved in any way with the preparation or execution of the subject notes upon which Dr. Wean had filed a complaint in confession of judgment against the Onoratos on December 7, 2009. (*Id.*, Paragraphs 6, 10-11). The Plaintiffs further admitted that Mr. Phelan had recommended that the Onorato Plaintiffs retain the Defendant attorney for entering into a settlement agreement with Dr. Wean, and that Plaintiffs had terminated their other attorneys' representation and hired the Defendant attorney for this purpose. (*Id.*, Paragraphs 14, 16).

The Plaintiffs also admitted in their Answer to this Motion that: (1) the subject Release and settlement agreement set forth that they were represented by the Defendants; (2) the Riverside Plaintiff was formed on or around August 31, 2010; (3) they had contributed properties to Riverside as of October 15, 2010, the date upon which Riverside borrowed $1,750,000 from Penn Business Credit pursuant to a loan personally guaranteed by the Plaintiff, Fred Onorato, and secured by mortgages against the Onorato Plaintiffs' properties that were contributed to Riverside along with mortgages against other properties owned by Mr. Phelan and Dr. Rosen;

12

and (4) the Penn Business Credit loan had closed on October 15, 2010. (*Id.*, Paragraphs 20-22, 24-25, 27-29). Plaintiffs additionally admitted in their Answer to the within Motion that Riverside had defaulted upon the Penn Business Credit (now Fulton Bank) loan, that the lender had initiated foreclosure proceedings against Riverside on May 17, 2012, as well as an action against the Plaintiff, Fred Onorato, to enforce his personal guaranty, and that Plaintiffs did not allege in their Amended Complaint whether Penn Business Credit was successful in obtaining a judgment against Mr. Onorato, but only that he was 'subjected to the loss of additional property on the personal guaranty' as compared to sustaining an actual loss. (*Id.*, Paragraphs 32, 34-37).

The Plaintiffs admitted also that this action was initiated by a Writ of Summons on October 10, 2012 and that Riverside was not named as a party when the Complaint was filed on July 18, 2013. (*Id.*, Paragraphs 38-40). The Plaintiffs admitted that they had successfully litigated the Defendants' Preliminary Objections to their Complaint and Amended Complaint with arguments that their pleadings were adequately specific. (*Id.*, Paragraphs 42, 44-45). Further, the Plaintiffs admitted that the Defendants had pleaded the statute of limitations defense in New Matter in their Answer to the Amended Complaint. (*Id.*, Paragraph 47). The Plaintiffs denied that the action was untimely filed, but did not assert the discovery rule or fraudulent concealment in any of their responsive pleadings when alleging that they first became aware of the damages arising from the Defendant attorney's negligence in or around August of 2012, or shortly after the initiation of legal actions commenced against them in May and June 2012. (*Id.*, Paragraph 53). The Plaintiffs admitted to all of the Defendants' representations in the instant Motion for Judgment on the Pleadings regarding the stipulations of the parties to remove from the Amended Complaint all claims regarding the escrow agreement signed by the Onorato Plaintiffs in 2010. (*Id.*, Paragraphs 54-57).

13

In response to the Defendants' contention in this Motion that they did not allege the date the Defendants were retained or when they believed the Defendants failed to advise them of a conflict of interest, the Plaintiffs averred that: "....Paragraph 19 of the Amended Complaint alleges that the Finkelman representation of the Onoratos as to the Wean settlement agreement was in place as of July 20, 2010 at the latest (and post-Amended Complaint discovery has revealed that the loss of the Cherry Tree property took place when the escrowed deed was recorded in favor of Wean on October 6, 2011), and the Finkelman representation of Riverside and the Onoratos as to the Riverside loan with Penn Business Credit was in place as of October 15, 2010 at the latest (and the loss of the properties contributed to Riverside was discovered not earlier than August 2012 (per Amended Complaint, Paragraph 34) when Penn Business Credit began foreclosure proceedings against the properties contributed to Riverside)." (*Id.*, Paragraph 119). Plaintiffs went on to contend that the commencement of this action on October 12, 2012 was neither two years nor four years longer than either (A) October 6, 2011 – the date when the Cherry Tree property was recorded in favor of Dr. Wean, which was the earliest date when the Onoratos could have known that they lost the Cherry Tree property which was put in escrow by the July 20, 2010 Release), or (B) May 2012 (the date when Penn Business Credit began to foreclose on properties contributed to Riverside, which was the earliest date when the Onoratos and Riverside could have known that they would be losing the properties contributed by Riverside. (*Id.*, Paragraph 123).

Regarding the Defendants' averment in the within Motion that the trigger of the limitations period for the Plaintiffs' causes of action occurred not later than the execution of the Release on July 20, 2010, the Plaintiffs countered that: "the trigger for the loss of the Cherry Tree property occurred not earlier than October 6, 2011 (when the Deed in favor of Dr. Wean

14

was recorded), and the trigger for the loss of the properties contributed to Riverside occurred not earlier than May 2012 (when the Penn Business Credit foreclosure actions began)", and the October 7, 2013 date of an action commenced by Riverside was timely. (*Id.*, Paragraphs 127 and 135). Plaintiffs admitted the allegation of the Defendants that they elected to stand on their pleadings and successfully opposed Defendants' preliminary objections on the basis of lack of specificity and failure to annex the contracts to the Amended Complaint. (*Id.*, Paragraph 129).

In answer to the Defendants' contention that, while Riverside is named as a Plaintiff, Riverside did not actually assert any claims against the Defendants or allege an attorney-client relationship with Defendants, the Plaintiffs replied that the caption of the Amended Complaint identifies Riverside as a co-Plaintiff; Paragraph 27 thereof averred that the Defendant attorney had represented Riverside at the Penn Business Credit loan transaction; and Paragraph 25 thereof averred that the properties contributed by Riverside were lost as a result of the Defendant attorney's negligence. (*Id.*, Paragraph 131). In response to the Defendants' assertion that Plaintiffs had not pleaded a reliance upon the discovery or fraudulent concealment rules in responding to their New Matter, the Plaintiffs contended that the Amended Complaint averred that Plaintiffs first became aware of damages they had suffered from the Defendant attorney's negligence in or around August 2012, which was shortly after the initiation of the legal actions commenced in May and June 2012 as described in Paragraphs 34 and 35 of the Amended Complaint. (*Id.*, Paragraph 139). The Plaintiffs admitted that this action was not commenced by them until October 10, 2012 and Riverside did not join as a Plaintiff until October 7, 2013. (*Id.*, Paragraph 142). The Plaintiffs further admitted the following allegations of the Defendants in the within Motion: (1) Riverside did not exist when the Onoratos entered into the Release; (2) Riverside was not formed until August 31, 2010, which was more than a month after the

15

Onoratos entered into the settlement with Dr. Wean on July 20, 2010; (3) any conduct forming the basis for the claim arising from the Release occurred before Riverside was formed; (4) Riverside cannot have a claim arising from the Release or a conflict of interest that arose not later than the execution of the Release because Riverside did not exist at the time the Release was executed; (5) Plaintiffs stipulated they are not asserting a claim arising from the treatment of the Penn Business Credit loan proceeds; and (6) all allegations in the Amended Complaint relating to the distribution of the loan proceeds and the handling of the escrow have been removed from the Amended Complaint and cannot be the basis of a claim. (*Id.*, Paragraphs 155-158, 164-165).

Despite their failure to plead a reliance upon the discovery rule, the Plaintiffs averred the emergence of knowledge of the following instances of the negligence of the Defendant attorney in post-Amended Complaint discovery – failure to disclose to Plaintiffs: (a) all of the risks and consequences that could arise from agreements being signed regarding the Penn Business Credit loan transaction; (b) all of the risks and consequences which could arise from the documents of formation of Riverside; and (c) the conflicts of interest in Defendant attorney's simultaneous representation of Dr. Rosen and Mr. Phelan regarding Collina and Riverside matters. (*Id.*, Paragraph 196).

The Plaintiffs opposed the Defendants' contentions *vis a vis* the lack of viability of the personal guaranty claim of Fred Onorato due to having suffered no losses with statements that the Plaintiff had directly contributed properties to Riverside that were lost as a result of the Defendant attorney's negligence; that the claim for those losses can be maintained by either Fred Onorato or Riverside; and that post-Amended Complaint discovery revealed that Fred Onorato had to incur legal fees to successfully defend the Penn Business Credit unlimited legal action on

16

the personal guaranty when the Defendant attorney was supposed to have negotiated and documented a limited basis therefor. (*Id.*, Paragraph 217). The Plaintiffs responded to the Defendants' contentions that their claim of breach of fiduciary duty rested on failure to reveal Defendants' representation of Mr. Phelan and fails on the merits with contentions that: (1) post-Amended Complaint discovery had revealed that the Defendant attorney failed to disclose the nature of his legal representation of Dr. Rosen, who was a member of Collina who formed, but never joined, Riverside; (2) Dr. Rosen's limited involvement in the Penn Business loan transaction was never explained to Plaintiffs as resulting from the Defendant's knowledge that Dr. Rosen's business associate, Frank Boyle, had warned the Defendant attorney that the Penn Business Credit loan transaction was ill-advised, and (3) Dr. Rosen owned properties in which Collina and Riverside were supposed to have an interest, but those properties never became owned by Collina or Riverside. (*Id.*, Paragraph 222).

The Plaintiffs went on to admit that, while they may have been aware of the Defendants' representation of Mr. Phelan, they learned for the first time in post-Amended Complaint discovery that the Defendant attorney knew, but did not disclose to Plaintiffs, [information] about Mr. Phelan's substantial money judgments and IRS obligations, and about Mr. Phelan being a target of a U.S. Attorney investigation and telling the Defendant attorney that 'we are all screwed without the Penn Business Credit loan,' thus preventing Plaintiffs from making informed decisions regarding (a) refraining from contesting the Wean confessed judgments; (b) executing the Release; (c) escrowing the Cherry Tree property deed to Dr. Wean; [(d)] contributing properties to Riverside; [(e)] becoming involved as a member of Riverside with Mr. Phelan as the co-managing member; and [(f)] allowing Riverside's use of contributed properties as collateral for the Penn Business Credit loan transaction. (*Id.*, Paragraph 237).

17

The Plaintiffs additionally admitted in reference to the Defendants' averments as to the lack of merit of their breach of fiduciary duty claim set forth in the within Motion that: (1) they had pleaded in the Amended Complaint their awareness of the representation of Mr. Phelan by the Defendants; (2) Mr. Phelan had referred the Plaintiffs to his lawyers, the Defendants; (3) they had fired the other separate lawyers who were representing them at the time in order to hire the Defendants; and (4) the Release itself, which was signed by the Onoratos, indicated that the Defendant attorney represented the Onoratos and Mr. Phelan. (*Id.*, Paragraphs 237-240). And, when replying to the Defendants' insistence that the Plaintiffs, therefore, could not base a conflict of interest claim against them on a lack of knowledge as to dual representation and could not fault the Defendants for failing to advise them to retain separate counsel when they already had separate counsel who were fired to retain Defendants as part of the joint representation with Mr. Phelan, the Plaintiffs alleged again that the Defendants failed to inform them of Mr. Phelan's financial and legal difficulties, and cryptically contended that "[t]here is a material difference between Plaintiff[s] knowing they could use independent counsel and Plaintiffs being told why they should use independent counsel." (*Id.*, Paragraph 241-242).

The Plaintiffs argued in their Memorandum of Law in Support of Their Answer to the Defendants' Motion for Judgment on the Pleadings that the Defendants' position that the trigger date for the limitations period for their professional negligence and breach of contract claim sounding in negligence is October 10, 2010, when the Release was executed, and that the filing of the writ of summons on October 10, 2012 was beyond the applicable two year statute of limitations period is incorrect. (*Id.*, p. 8) The Plaintiffs asserted that such claims cannot be initiated until the suffering of an actual loss and the fact of damages being established, even if the amount were uncertain, citing to Adamski v. Allstate Ins. Co., 718 A.2d 1033 (Pa. Super.

18

1999). (*Id.*). According to the Plaintiffs, the earliest date when they could have known from public records that they had suffered an actual loss was October 6, 2011 when Dr. Wean recorded the Deed for the 450 Cherry Tree property, and for Riverside, on August of 2012 after Penn Business Credit obtained judgment against Riverside for defaulting upon the Penn Business Credit loan. (*Id.*, pp. 8-9, fn 3). Plaintiffs maintained that "[c]learly, the filing of the writ of summons on October 10, 2012 was within the shortest applicable 2-year limitations period after the October 6, 2011 date of forever loss of the equity value of the 450 Cherry Tree property." (*Id.*, p. 9). Plaintiffs alleged that Defendants' position that Riverside's claims are time-barred because the filing of the Amended Complaint on October 7, 2013 was outside the two year limitations period from the date of the Penn Business Credit loan settlement on October 15, 2010 is incorrect because "the earliest date when Riverside could have known from public records that they suffered an actual loss occurred during August 2012, when the public records show that Penn Business Credit had obtained judgment against Riverside in the Penn Business Credit loan transaction." (*Id.*, pp. 10-11). Plaintiffs claimed in a footnote to this statement that "[d]iscovery also has revealed that Defendants had represented Riverside in its formation and at the Penn Business Credit loan settlement." (*Id.*, p. 11, fn 5). Plaintiffs further argued that:

> "Riverside's claim for damages are mainly for the loss of properties contributed to Riverside [adding, in an accompanying footnote placed here that: "[a]ny claim for damages associated with the Fred Onorato personal guaranty is subsumed by the claim for loss of the properties contributed to Riverside"], and the various stipulations to narrow contentions, claims and damages do not operate to eviscerate that particular claim for damages. While Defendants did not cause the default on the Penn Business Credit loan, it was Defendants' failure to properly advise the Onoratos and Riverside at the time of the Penn Business Credit loan that precluded the Onoratos and Riverside from making informed decisions which would have prevented the losses. Accordingly, Riverside's remaining claims against Defendants have been pleaded properly, and should continue at trial." (*Id.*).

19

The Plaintiffs addressed the Defendants' averments in this Motion that the breach of fiduciary duty claim is meritless with the contention that they had adequately pleaded the elements of this cause of action that: (1) the defendant acted negligently or failed to act in good faith or solely for the benefit of the plaintiff for all matters for which the attorney was employed; (2) the plaintiff suffered an injury; and (3) the defendant's failure to act solely for the plaintiff's benefit was a real factor in bringing about the plaintiff's injuries," with citation to Dinger v. Allfirst Financial, Inc., 82 Fed. Appx. 261, 265 (3rd Cir. 2003)(citing McDermott v. Party City Corp., 11 F. Supp. 2d 612, 626 n. 18 (E.D. Pa. 1998)). (Id., p. 12). Plaintiffs again insisted that the Defendants' withholding of the foregoing information that they deemed vital to their ability to make informed business decisions caused the losses complained of in the Amended Complaint. (Id., pp. 12-13).

Although a hearing on the Defendants' Motion for Judgment on the Pleadings was commenced by this Court on July 13, 2017 following an untranscribed robing room discussion and negotiations between the parties, the Plaintiffs entered a stipulation into the record redacting from the Amended Complaint Paragraph 35 alleging Penn Business Credit's initiation, on June 13, 2012, of an action arising from Fred Onorato's personal guaranty of the subject loan and the statement in Paragraph 56 thereof alleging the Defendant attorney's liability for breaching his fiduciary duty to Plaintiffs through his authorization of the misuse of the Penn Business Credit loan proceeds. Plaintiffs additionally waived enforcement of Fred Onorato's guaranty regarding Plaintiffs' MacDade Boulevard and Wilson Avenue properties, inasmuch as they had not lost these properties under the guaranty. Thereafter, the Plaintiffs, took no further part in the courtroom proceedings that were, as a result, brought to an end. The Court subsequently entered

20

the following appealed from Order disposing of the Defendants' Motion for Judgment on the Pleadings:

## "ORDER

AND NOW, this 14th day of September, 2017, upon consideration of Defendants', Howard A. Finkelman, Esquire and Bock and Finkelman, P.C., Motion for Judgment on the Pleadings, and Plaintiffs', Fred and Edwina Onorato, h/w, Answer thereto, as well as the Memoranda of Law submitted in support thereof, and oral argument having been heard thereon, it is hereby ORDERED and DECREED that said Motion will be, and hereby is, GRANTED.

IT IS FURTHER ORDERED and DECREED that Plaintiffs' "revised" Complaint filed October 7, 2013 (which referred to Riverside Management Group, LLC as a Plaintiff in paragraph 2 thereof, but which neglects to set forth any viable claims against these Defendants which are not otherwise time-barred) will be, and hereby is, DISMISSED WITH PREJUDICE and that JUDGMENT will be, and hereby is, entered against all alleged Plaintiffs and in favor of Defendants, Howard A. Finkelman, Esquire and Bock and Finkelman, P.C.

BY THE COURT:
/s/CHARLES B. BURR, II   S.J."

The Plaintiffs have submitted the following Concise Statement of Errors Complained of on Appeal:

"1. This Honorable Court committed error of law or abused its discretion, by having granted judgment on the pleadings in favor of Defendants . . . and by having dismissed all claims by 'alleged' Plaintiffs in this case, if such ruling was based upon the purported application of one or more statutes of limitations, as to the discrete claims of the [Plaintiffs, Fred and Edwina] Onorato[].

2. This Honorable Court committed error of law or abused its discretion, by having granted judgment on the pleadings in favor of Defendants . . . and by having dismissed all claims by 'alleged' Plaintiffs in this case, if such ruling was based upon the purported application of one or more statutes of limitations, as to the discrete claims of [the Plaintiff,] Riverside.

3. This Honorable Court committed error of law or abused its discretion, by having granted judgment on the pleadings in favor of Defendants . . . and by having dismissed all claims by 'alleged' Plaintiffs in this case, if such ruling was based upon the purported failure to properly plead each of the requisite elements of the negligence, breach of contract and/or breach of fiduciary duty claims asserted in the original Complaint or in the Amended Complaint, as to either or both of the discrete claims of the [Plaintiffs].

21

4. This Honorable Court committed error of law or abused its discretion, by having granted judgment on the pleadings in favor of Defendants . . . and by having dismissed all claims by 'alleged' Plaintiffs in this case, if such ruling was based upon the Court's purported failure to consider, and to rule upon, the merits of the matters presented in Plaintiffs' Petition for Leave to File a Second Amended Complaint, which had been filed with the Court on September 5, 2017 and which was pending prior to the Court's September 14, 2017 Order regarding Defendants' Motion for Judgment on the Pleadings[], particularly when Defendants never responded to Plaintiffs' Petition for Leave to File a Second Amended Complaint, because[,] although the decision to grant or deny a petition to amend a pleading is a matter of judicial discretion, Pennsylvania appellate courts have held that amendments should be allowed with great liberality at any stage of the case unless they violate the law or prejudice the rights of the opposing party, and Defendants never alleged violation of law nor prejudice by the Court's granting of Plaintiffs' Petition for Leave to File a Second Amended Complaint.

5. This Honorable Court committed error of law or abused its discretion, by having granted judgment on the pleadings in favor of Defendants . . . and by having dismissed all claims by 'alleged' Plaintiffs in this case, when, if such ruling was based upon the purported failure of Riverside to plead any claims in the so called 'revised' Complaint filed October 7, 2013, then there was no basis for the Court to have also dismissed the separate claims asserted by the [Plaintiffs, Fred and Edwina] Onorato[] in both the original Complaint and the 'revised' Complaint filed October 7, 2013." (Plaintiffs' Concise Statement of Errors Complained of on Appeal, pp. 2-3)(Emphases omitted).

## Waiver of Issues

The Plaintiffs have raised contentions of error or abuse of discretion in the event that the Court's ruling from the appealed from Order was based upon a finding that the Amended Complaint was not well pleaded as to the causes of action waged therein. (Concise Statement, Paragraph 3). However, this Court's Order is clear that Judgment was granted to the Defendants solely on the findings that the Plaintiffs' causes of action are either not viable against the Defendants or are time barred. Hence, this contention is of no moment or merit and need not be discussed any further in this Opinion. The same must be said of Plaintiffs' contention of error or abuse of discretion in the event that the appealed from Order improperly dismissed the separate claims of the Onorato Plaintiffs along with those of the Plaintiff, Riverside, for reasons that

22

Riverside had not pleaded any causes of action against the Defendants in the Amended Complaint. (Concise Statement, Paragraph 5).

Plaintiffs additionally raised a claim of error or abuse of discretion for disposition by this Court of the Defendants' Motion for Judgment on the Pleadings before the issuance of a ruling on the Plaintiffs' Petition for Leave to File a Second Amended Complaint that was submitted a week before the appealed from Order was filed. (Concise Statement, Paragraph 4). However, because this issue is being raised for the first time on appeal, it must be deemed waived. Pennsylvania Rule of Appellate Procedure 1925(b); Orange Stones Co. v. City of Reading Zoning Hearing Board, 32 A.3d 287, 291 (Pa. Cmwlth. 2011). "It is well settled that issues not raised before the trial court cannot be raised for the first time on appeal or in a Rule 1925(b) Concise Statement of Claims Raised on Appeal." Irwin Union National Bank and Trust Co. v. Famous, 4 A.3d 1099 (Pa. Super. 2010), *appeal denied*, 20 A.3d 1212 (Pa. 2011). *Id.*

### Discussion

The Plaintiffs' have contended in their remaining claims of error or abuse of discretion that this Court wrongly granted judgment on the pleadings in favor of Defendants and dismissed all claims by the Plaintiffs in this case if such ruling was based upon the purported application of one or more statutes of limitations as to the discrete claims of the Plaintiffs, Fred and Edwina Onorato, and those of the Plaintiff, Riverside. (Concise Statement, Paragraphs 1 and 2). Under Pennsylvania law and the facts of this case, the Plaintiffs' professional malpractice claims against the Defendants sounded in negligent contractual breach in Count I, and specifically in tort in Count II of the Amended Complaint. It goes without saying that, in order to establish a claim of breach of contract, the terms thereof must be specifically pleaded as well

23

as the conduct that constituted the breach. It will be recalled that the Plaintiffs provided no copy of their agreement with the Defendants, contending that it was made orally, and that the surrounding allegations in their Amended Complaint alleged the Defendants' failure to perform in conformity with the requisite standard of care as the conduct which comprised the putative breach. As the Defendants submitted in their Memorandum of Law in Support of the within Motion:

> "In the context of this action, [P]laintiffs must prove the [D]efendants failed to achieve their objective of representation, failed to follow a specific instruction by [P]laintiffs or breached a specific provision of the retention agreement to prove a breach of contractual duty. Plaintiffs did not allege that [D]efendants failed to follow their instructions or failed to achieve their objective. To the contrary, [P]laintiffs' claims are based on the contentions that [D]efendants should have given them different advice and achieved their objective in a different way. The essence of [P]laintiffs' claims are how the legal services were performed and the nature of the advice provided, not that the [D]efendants provided no legal service or no advice." (*Id.*, p. 11).

Reviewing the Plaintiffs' contentions about the advice provided to them by the Defendant attorney, there is the averment that the Defendant never apprised them of Mr. Phelan's legal problems with the IRS and Attorney General, material that would surely be protected by attorney client privilege. The Plaintiffs also were unhappy that the Defendant attorney did not provide them with all of the information they felt should have been provided, *sans* any representation that they had even described what that information might be and requested that it must be given. An attorney cannot be faulted under any legal theory for not being a mind reader.

The distinction between negligence and breach of contract claims in a professional malpractice case was explained as follows in New York Central Mutual Ins. Co. v. Margolis Edelstein, 2015 WL 412519 (M.D. Pa. Jan. 30, 2015)(quoting Frantz v Fasullo, 2014 WL 6066020, *4 (M.D. Pa. Nov. 13, 2014)(interpreting Pennsylvania law):

24

"In addition to the express provisions of an attorney-client agreement, '[a]n attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large.' Bailey [v. Tucker], 621 A.2d [108] at 115 [Pa. 1993]. Thus, absent allegations that the attorney failed to follow specific client instructions or breached a specific provision of their contract, a client's breach of contract claim against a lawyer 'is not a true contract cause of action but sounds in negligence by alleging [that the attorney] failed to exercise the appropriate standard of care. Storm [v. Golden], 371 Pa. Super. 368, 538 A.2d [61], 65 [Pa. Super. 1988]; see also Edwards v. Thorpe, 876 F. Supp. 693, 694 (E.D. Pa. 1995)([W]hen a plaintiff's cause of action is based on the attorney's failure to exercise due care, it will sound in contract only if the attorney fails to follow the client's specific instructions, or, by her negligence, breaches a specific provision of the contract." Id. (emphasis omitted).

Because the Plaintiffs have not pleaded the Defendant's breach of specific contracted for instructions, but alleged essentially a mere failure to read their minds *vis a vis* information desirable for imparting to them at the time of their entry into the arrangements for which the Defendants were hired, and pleaded a contractual breach consisting of a failure to perform at the requisite standard of care of members of the legal profession, their Count I claim against the Defendants alleging breach of contract sounds in tort and not in contract. New York Central Mutual Ins. Co. v. Margolis Edelstein, *supra*. Hence, both of the Plaintiffs' causes of action alleging professional malpractice by the Defendants were subject to a two year limitations period. 42 Pa.C.S.A. § 5524, *supra*. Plaintiffs have not disputed that the statute of limitations for their claims of breach of fiduciary duty against the Defendants and respondeat superior against the Defendant law firm is two years as well.

As to their claim regarding the date when the two year statute of limitations was triggered, the Plaintiffs asserted in response to this Motion that they first became aware of the damages arising from the Defendant attorney's negligence in or around August of 2012, or shortly after the initiation of the legal actions arising from Riverside's default in repaying the Penn Business Credit loan that were commenced in May and June of 2012, *i.e.*, the confessed

25

judgment and foreclosure on escrowed deeds on Onorato properties contributed by Riverside and the action by Penn Business Credit against the Plaintiff, Fred Onorato, as guarantor of the $1,750,000.00 loan proceeds, respectively. Plaintiffs alleged in Paragraph 19 of their Amended Complaint that the Finkelman representation of the Onoratos as to the Wean settlement agreement was in place as of July 20, 2010 at the latest, and that post-Amended Complaint discovery has revealed that the loss of the Cherry Tree property took place when the escrowed deed was recorded in favor of Dr. Wean on October 6, 2011. Plaintiffs alleged in Paragraph 34 of their Amended Complaint that the Finkelman representation of Riverside and the Onoratos as to the Riverside loan with Penn Business Credit was in place as of October 15, 2010 at the latest, and that the loss of the properties contributed to Riverside was discovered not earlier than August 2012 when Penn Business Credit began foreclosure proceedings against the properties contributed to Riverside. Plaintiffs thus summarized that the Onoratos' commencement of this action on October 12, 2012 was neither two years nor four years longer than either October 6, 2011 – the date when the Cherry Tree property was recorded in favor of Dr. Wean, which was the earliest date when the Onoratos could have known that they lost the Cherry Tree property that was put in escrow under the July 20, 2010 Release, or May 2012 - the date when Penn Business Credit began to foreclose on properties contributed to Riverside and the earliest that the Onorato Plaintiffs and the Plaintiff, Riverside, could have known that they would be losing the other foreclosed upon properties contributed to Riverside that became collateral for the Penn Business Credit loan. Therefore, in Plaintiffs' view, the addition of Riverside's claims to the Amended Complaint on October 7, 2013 was not untimely either.

Nevertheless, the properties claimed by the Onorato and Riverside Plaintiffs as damages in this action would not have been lost had Riverside not defaulted upon its

26

responsibility for repayment of the loan taken from Penn Business Credit and guaranteed by the Plaintiff, Fred Onorato, in order to accomplish the Wean settlement of the confessed judgment action against him. In addition, the Plaintiffs have stipulated out of this case any and all claims against the Defendants arising from the escrow and disbursement of the loan proceeds. Moreover, inasmuch as the judgment confessed against the Plaintiff, Fred Onorato, was not adjudicated in court, but concluded with that settlement, it cannot form the basis of any viable claim against the Defendants by the Onorato and Riverside Plaintiffs that it had caused an involuntary loss. Therefore, with no damages being established, in order to plead the Defendants' liability for professional malpractice and respondeat superior, the Plaintiffs must rely upon the facts and circumstances of the initiation of the representation in July of 2010 as triggering the limitations period for any claims thereof.

The Plaintiffs have alleged only that the Defendant attorney's breach of the requisite standard of care consisted in the failure to apprise them of clearly privileged information as to the legal problems of another client, Mr. Phelan, that they neither requested nor demanded at the time. As to their claim of a breach of fiduciary duty, the Plaintiffs have not established grounds in their pleadings that would support any breach of that duty nor any claim of loss. Without belaboring the prior discussion of issues raised in this appeal, hereinabove set forth at great length, the conclusion that the Plaintiffs had failed to timely plead viable causes of action and damages against the Defendants is both reasonable and ineluctable.

## Conclusion

A party is permitted to file a motion for judgment on the pleadings pursuant to Pennsylvania Rule of Civil Procedure 1034 when the pleadings are closed and there would be no delay of trial. In rendering a decision on a motion for judgment on the pleadings, a court may

27

consider only the pleadings and any documents properly attached thereto. Pa. R.C.P. 1034; Vogel v Berkley, 511 A.2d 878, 880 (Pa. Super. 1986). Judgment on the pleadings may be entered when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Guerra v. Redevelopment Authority of City of Philadelphia, 27 A.3d 1284 (Pa. Super. 2011); Miami National Bank v. Willens, 190 A.2d 438, 439 (Pa. 1963). Judgment on the pleadings may be granted, however, only where "the moving party's right to succeed is certain and the case is so free from doubt that trial would be a fruitless exercise." Conrad v. Bundy, 777 A.2d 101 (Pa. Super. 2001).

The Plaintiffs' financial woes attendant to their involvement with the efforts to compensate Dr. Wean for his contributions to Collina began before the Defendants were hired to represent them. Dr. Wean had previously confessed judgment against the Plaintiff, Fred Onorato, when the allegedly coerced arrangement to pay Dr. Wean in judgment notes collateralized with Plaintiffs' properties fell through. On Mr. Phelan's advice, the Plaintiffs fired their previous attorneys who, according to representations from the Defendants in their pre-trial Settlement Memorandum, had advised against the execution of the Release and Settlement of that action and hired the Defendants with full knowledge that the Defendants were also Mr. Phelan's lawyers. Thereafter, Riverside was formed and, using its collection of the Onorato Plaintiffs' and other group members' properties as collateral, secured a $1,750,000.00 loan from Penn Business Credit, the proceeds of which were used to compensate Dr. Wean pursuant to the Release. That the Plaintiffs were instrumental in providing the deed for the Cherry Tree property for inclusion in the escrow, which Dr. Wean later filed, renders the Plaintiffs' protestations that they had no idea he would do so, disingenuous, especially since Dr. Wean had fully demonstrated that he would attempt to regain the value of his contributions to Collina from its members by any means

28

suggested claim of damages arising from the Plaintiff's, Fred Onorato, guaranty of the Penn Business Credit loan were stricken in part at the hearing on the Defendant's Motion prior to the issuance of the appealed from Order. For that reason and because the Plaintiff has not pleaded the potential for recovering a loss in that regard, this cause of action is non-viable besides being filed outside of the applicable two year statute of limitations. Kituskie v. Corbman, 552 Pa. 275, 282, 714 A.2d 1027, 1030 (1998); 42 Pa.C.S.A. § 5524, *supra*. Moreover, because the Plaintiffs' have failed to timely plead viable causes of action against the Defendant attorney, Count IV of the Amended Complaint alleging a claim of Respondeat Superior against the Defendant law firm also fails.

For all of the foregoing reasons, this Court's Order granting the Defendants' Motion for Judgment on the Pleadings and dismissing, with prejudice, the Plaintiffs' Amended Complaint for raising non-viable claims against the Defendants that were not otherwise time barred must not be reversed on appeal.

BY THE COURT:

_____
CHARLES B. BURR, II                    S.J.

31